THE FRANKLIN COUNTY MINING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(TONY CHESTNUT, Defendant in Error.)

*Opinion filed October 28, 1926.*

1. WORKMEN'S COMPENSATION—*when a petition for review on ground of increase of disability should be dismissed.* A petition for review of an award under paragraph (*h*) of section 19 of the Compensation act should be dismissed where the evidence as a whole fails to show any increase of disability since the original award was made, the evidence for the petitioner tending to show only that the original award, which was for loss of twenty-five per cent of the use of the left leg, was insufficient because the leg, which had been broken, was not sufficiently restored to permit its use to the extent indicated by the award.

2. SAME—*jurisdiction of commission reviewing award under paragraph (h) of section 19 of Compensation act.* The purpose of the proceeding for review under paragraph (*h*) of section 19 of the Compensation act is only to secure a change in the award to correspond to an actual change in condition subsequent to the time the award was made, and on such review the Industrial Commission is limited to a consideration of such facts, only, as have arisen since the making of the original award, and if the disability has not actually recurred, increased, diminished or ended, the original award, even though insufficient, must stand.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. JOHN C. EAGLETON, Judge, presiding.

WILLIAM W. HART, (SAMUEL A. HARPER, of counsel,) for plaintiff in error.

A. W. KERR, and A. C. LEWIS, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Tony Chestnut filed an application for compensation with the Industrial Commission on July 28, 1922, in which he charged that on June 2, 1921, while employed by the Franklin County Mining Company, he suffered an injury

to his leg. The parties stipulated that on June 2, 1921, they were operating under the provisions of the Workmen's Compensation act; that on that day Tony Chestnut was employed by the Franklin County Mining Company and received an injury which arose out of and in the course of his employment; that notice of the accident was given and demand for compensation made within the time required by the act; that the earnings of the applicant for the year preceding the injury were $1248 and that his average weekly wage was $24; that he was a single man; that first aid, medical, surgical and hospital services had been furnished by the employer and that it had paid the applicant $574 in compensation. On September 8, 1922, the arbitrator awarded him $12 per week for 66 weeks, the period of temporary total incapacity for work, and the further sum of $12 per week for 43¾ weeks, in accordance with paragraph (*e*) of section 8 of the act as amended, because the injuries sustained caused twenty-five per cent permanent loss of the use of the left leg. Neither party sought a review of the arbitrator's award. Subsequently, on September 25, 1923, Chestnut filed with the Industrial Commission his petition for a review of the arbitrator's award, alleging that since it was made his disability had recurred and increased. A hearing was held on that petition, and on May 7, 1924, the commission by its decision found that the petitioner's disability had recurred and increased since the arbitrator's award and that as a result he had sustained the permanent loss of the use of fifty per cent of the left leg. Additional compensation at the rate of $12 per week for 87½ weeks was awarded. On review by writ of *certiorari* the circuit court of Franklin county confirmed the commission's decision. The company's petition for a writ of error from this court was allowed, and the record is here for review.

The original hearing before the arbitrator occurred on September 8, 1922. Chestnut testified that while he was

loading coal for the Franklin County Mining Company on June 2, 1921, a bar on a machine struck his left leg, about four inches below the knee, and broke both bones; that he had been treated by two physicians for five months and eight days following the injury; that his leg pained him constantly; that he could not walk over two or three blocks, or stand on his leg for ten minutes, or run; that his leg was crooked and weak and became progressively worse; that he had not worked since the accident and that he was unable to work. A physician called by the claimant testified that the tibia had a compound fracture; that an exostosis had been thrown out, which caused the leg to be weak; that nature might absorb some, but not much, of the callus; that the motion in the ankle and knee joints seemed to be good but that the leg was crooked, and that in his opinion there was permanent disability.

Two physicians were called by the plaintiff in error on the hearing before the arbitrator. One testified that X-ray pictures which he had taken on the day of the accident disclosed a compound, comminuted fracture of the left tibia in the upper third and a transverse fracture of the fibula in the same region. He made another X-ray examination on September 2, 1922, which showed that the union was solid and that the absorption of callus had just begun. In his opinion there was a good functional recovery. The other physician, who had treated the claimant immediately after he was injured and occasionally thereafter, found the same fractures. His last examination, made on June 2, 1923, two years after the accident, disclosed a good, firm, bony union, and while there was some lateral deformity in the leg at the junction of the two fragments, the claimant was, in the physician's opinion, able to work at that time.

The hearing on the petition for review alleging the recurrence and increase of the claimant's disability was held by the commission on April 15, 1924. Chestnut testified that the pain in his leg extended from the ankle to the hip;

that he was compelled to rest after walking two or three blocks; that he could not run or lift anything because it hurt him, and that his leg was growing worse. He admitted on cross-examination that at the time of the arbitrator's hearing he could neither run nor lift and that he had not tried to do any work since that time.

Dr. O. L. Walter testified that on September 20, 1923, he made a physical and X-ray examination of the claimant's left leg; that the examination disclosed a healed fracture, with considerable angulation and deformity about the junction of the upper with the middle third, and a shortening of the leg by half an inch or more, owing to the overlapping deformity of the broken bone ends; that the deformity and shortening affected the functional use of the leg and caused a limp and a tilting of the pelvis to compensate for the shortening; that in time the tilting of the pelvis would cause a bending of the spine and have a decided effect upon it; that the deformity and angulation caused a strain upon the knee and ankle joints, and that as the claimant's age advanced his leg would become more impaired, functionally. Dr. Walter made another examination on April 15, 1924, which, he said, showed the claimant's leg to be in about the same condition as it was when he first examined it on September 20, 1923. On cross-examination Dr. Walter testified that fractures usually improve; that in the instant case there was a complete recovery, with the exception of a scar and a callus, which were permanent; that there was no direct injury to the left knee or ankle and that the functional recovery of the leg was complete.

Dr. Edgar Austin, who was the claimant's attending physician from the time of the accident and who testified before the arbitrator, made his last examination on January 30, 1924. He testified that he then found the general appearance of the claimant good and the tone of his muscles in normal condition, but that the left leg at the point of

the fracture, owing to excessive bone formation, was larger than the right leg; that there was a slight angulation in the left leg, and that it was about three-eighths of an inch shorter than the right leg but of the same length as it was at the time of the hearing before the arbitrator; that in the left leg there was a puffiness just below the external malleolus; that there was a good, firm, bony union; that at the time of the first hearing there were sharp, roughened areas of bone, caused by the comminution of the bone at the time of the injury but which at the time of the hearing on review had been markedly absorbed and smoothed off, and that the callus, from the external examination made, did not seem to be as large as on the former hearing.

Dr. J. B. Moore testified that he examined the claimant on January 3, 1924, with special reference to the legs; that the muscles of both legs and thighs showed good tone; that the circumference of the right leg was fourteen inches and of the left leg fourteen and one-half inches; that the former measured thirty-five and one-half inches in length and the latter thirty-five and one-quarter inches; that the bone of the left leg was compounded; that there was a little thickness of the tibia and a slight puffiness anterior and below the tip of the left external malleolus; that there was no enlargement of the bone, the extension and flexion of the ankle were practically free and the lateral movements good, and that the applicant had a good functional recovery of the left leg. On cross-examination Dr. Moore admitted that there was an angulation in the leg and a slight overlapping of the bone fragments; that the result was not perfect, for there was a little deformity at the side of the fracture causing some loss of function in the leg, and that there was some puffiness above the ankle but not in the joint itself. He added that the callus was healthy and no reason for pain existed; that the nerves were unaffected and there was no evidence of palpitation of the muscles about the scar, and that the callus formation would gradu-

ally diminish as time elapsed. At the conclusion of the testimony the commission examined the claimant's leg.

Plaintiff in error contends that there is no competent evidence in the record to show that since the arbitrator's award was made the disability of the claimant has recurred and increased, as found by the Industrial Commission. The claimant testified, both before the arbitrator and the commission, that if he walked two or three blocks he was obliged to rest; that he could not run or lift anything and that the condition of his leg continually grew worse. Before the arbitrator he testified that his leg pained him constantly, while before the commission he stated that the pain extended from the ankle to the hip. He did not claim on the later hearing that he suffered any increased burden or inconvenience because of the shortening of his leg. His testimony on both hearings was substantially the same. Two of the physicians on the hearing before the commission were unable to discover any cause for pain. A like number stated that there was a good, firm union of the fracture while the third found the union to be imperfect. The physicians differed as to the extent of the shortening of the limb by reason of the fracture. One found it to be one-half of an inch or more, another thought it was three-eighths of an inch, while Dr. Moore's measurements showed that the left leg was one-quarter of an inch shorter than the right leg. It does not appear that the left leg was any shorter at the second hearing than it was at the first. More stress was laid on the effect of the tilting of the pelvis by the physician called by the claimant than by the other two. Testimony was adduced, both before the arbitrator and the commission, that there was some lateral deformity in the leg and that it was crooked. The physician who testified before the commission in the claimant's behalf said that the functional recovery of the leg was complete. The evidence heard by the commission on the petition for review, to the extent that it did not relate to the original injury as shown

on the earlier hearing before the arbitrator, consisted of an amplification of the nature and effects of that injury and not of a new development from it. A consideration of the evidence as a whole fails to show, as the petition for review charges, any increase of disability since the arbitrator's award was made.

The petition in the instant case was filed under paragraph (h) of section 19 of the Workmen's Compensation act, (Smith's Stat. 1923, p. 988,) which provides: "An agreement or award under this act providing for compensation in installments, may at any time within eighteen months after such agreement or award be reviewed by the Industrial Commission at the request of either the employer or the employee, on the ground that the disability of the employee has subsequently recurred, increased, diminished or ended; and on such review, compensation payments may be re-established, increased, diminished or ended." The only question for the consideration of the commission upon a petition for review under that paragraph is whether the disability has recurred, increased, diminished or ended, and only in case of changed conditions can it re-instate, increase, diminish or terminate the compensation payments. If the employee's condition is the same as it was at the time the award under review was made, the commission has no authority or jurisdiction to change the original award. That award stands as an adjudication of all matters in dispute up to the time of its rendition, and neither party is thereafter permitted to say it was wrong in any respect. (*Summit Coal Co.* v. *Industrial Com.* 308 Ill. 121; *Belleville Brick Co.* v. *Industrial Com.* 305 id. 577; *Stromberg Co.* v. *Industrial Com.* 305 id. 619; *Bloomington, Decatur and Champaign Railroad Co.* v. *Industrial Board*, 276 id. 120.) The purpose of the proceeding under paragraph (h) of section 19 of the act is only to secure a change in the award to correspond to an actual change in condition subsequent to the time the award was made. Under that para-

322—36

graph the commission is limited to a consideration of such facts, only, as have arisen since the making of the original award. *Belleville Brick Co.* v. *Industrial Com. supra; Bloomington, Decatur and Champaign Railroad Co.* v. *Industrial Board, supra; Simpson Construction Co.* v. *Industrial Board,* 275 Ill. 366.

Whether the arbitrator's award was correct cannot now be considered. No review was sought and every matter in dispute up to the time of that award was finally determined. Since the evidence fails to disclose any subsequent increase of disability the petition for review should have been dismissed.

The judgment of the circuit court is reversed and the additional award made by the Industrial Commission is set aside.

*Judgment reversed and additional award set aside.*