**ATLANTIC COAST SHIPPING CO. et al.**
**v. GOLUBIEWSKI et al.**
Nos. 2044, 2045.

District Court, D. Maryland.
Dec. 28, 1934.

Boyd B. Graham (of Marbury, Gosnell & Williams), of Baltimore, Md., for complainants.

Marion A. Figinski, of Baltimore, Md., for insured.

Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., for deputy commissioner.

CHESNUT, District Judge.

These cases arise in the course of administration of the Longshoremen's and Harbor Workers' Compensation Act (33 USCA §§ 901–950). The single question presented is whether an injured employé who has been receiving compensation for temporary partial disability under a valid order of the Deputy Commissioner ceases to be entitled

thereto by reason of his imprisonment in the penitentiary under a sentence for life consequent upon conviction for murder in the first degree.

The relevant facts which are not in dispute may be shortly stated. The injured employé was a deckman in the employ of the Atlantic Coast Shipping Company who was severely injured in the course of his employment on November 6, 1931. He was accidentally knocked overboard from a steamship in the Baltimore Harbor, falling first to the wharf and then into the water. His injuries included a severe and extensive fracture of the skull with other consequential damages including apparently an injury to one ear with partial loss of hearing and also possibly some dizziness resulting from the ear injury. The employé was paid compensation at the rate of $20 a week (two-thirds of his average weekly wages prior to his accident and injury) for a period of 58 weeks, or $1,160 in all, on the basis of a temporary total disability for that period; but thereafter on December 16, 1932 the Deputy Commissioner as a result of further hearing made an award that effective as of that date compensation should be paid at the rate of $15 per week to continue until further review was had. This rate of compensation was based on the finding that the employé was then partially disabled to the extent of 75% of his earning capacity at the time of injury, thus constituting what seems to be properly classified as a temporary partial disability. The employer's insurer paid compensation to the employé in accordance with this award at the rate of $15 a week for 86 weeks, but on August 9, 1934 discontinued payments and petitioned the Deputy Commissioner to modify the former award, on the ground that on June 8, 1934, the employé had been sentenced to the Maryland Penitentiary for life consequent upon his conviction of murder (of his wife) in the first degree (in the Criminal Court of Baltimore), and his then present confinement under said sentence in the Maryland Penitentiary. The Deputy Commissioner, however, by order dated October 15, 1934, after finding that there had been "no change in the physical condition of the claimant since the filing of the order of December 16, 1932" refused the relief requested "for the reason that the imprisonment of the claimant is not a change in conditions within the meaning of section 22 of the Act [33 USCA § 922]." Under date of September 10, 1934 the Deputy Commissioner also made a further award of $350 to be paid to the employé "for seri-

ous facial disfigurement" resulting from the injury. This latter sum has been paid by the insurance carrier and is not involved herein. And it is stipulated by counsel that the employé's "condition has remained unchanged from a medical standpoint" since the order of December 16, 1932. On October 16, 1934 the Deputy Commissioner, on the application of the employé, passed a further order directing the employer to pay the accumulated and unpaid sum of $159 as the amount of compensation in default. See Longshoremen's and Harbor Workers' Compensation Act § 18 (33 USCA § 918).

Two separate suits have now been filed by the employer and its insurance carrier, one (case No. 2044) being for the purpose of setting aside the order of the Deputy Commissioner dated October 15, 1934, and the other (case No. 2045) praying for similar action with regard to the order of the Deputy Commissioner dated October 16, 1934.

The contention advanced by the employer and its insurance carrier is to the effect that, as the compensation payments now in question are given for only *temporary partial* disability and not for *permanent* total or partial disability they must be considered as given only for the purpose of indemnifying the employé against loss of wages due to partial loss of earning capacity. Reference is made to the definition of "disability" contained in section 2 (10) of the Act, 33 USCA § 902 (10), where it is defined as follows:

"'Disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."

The argument is that one confined in the penitentiary is thereby precluded from earning wages and therefore it is said that the disability from the original injury is no longer the effective cause of loss of wages. And it is further said that as the state has now assumed charge of the care and maintenance of the former employé there is no further occasion for the employer to be burdened with disability payments.

█ However, in my opinion the exact legal question depends upon the proper construction and application of section 22 of the Act (33 USCA § 922) which provides for modification of awards. The provision is as follows:

"Upon his own initiative, or upon the application of any party in interest, on the ground of a *change in conditions* or because of a mistake in a determination of fact by

the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, review a compensation case in accordance with the procedure prescribed in respect of claims in section 919 of this chapter, and in accordance with such section issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation." (Italics supplied.)

The wording to be construed and applied is that italicized. Looking at the context, in relation to the whole scope and general purposes of the Act, the most natural meaning to be given to the expression "change in conditions" would seem obviously to refer to a change in the physical condition of the employé caused by the accident. And this has been the meaning generally attributed to similar phraseology in state workmen's compensation acts. Independence Indemnity Co. v. White (Tex. Com. App.) 27 S.W.(2d) 529; Skelly Oil Co. v. Thomas, 147 Okl. 86, 295 P. 213; South v. Indemnity Insurance Co., 39 Ga. App. 47, 146 S. E. 45; Indianapolis Pump & Tube Co. v. Surface, 86 Ind. App. 55, 155 N. E. 835; Franklin County Mining Co. v. Industrial Commission, 322 Ill. 555, 153 N. E. 608. And it has recently been held in the 9th Circuit that this language in section 22 of the act (33 USCA § 922) does not apply to a change in earnings due to *economic conditions*. McCormick S. S. Co. v. U. S. Employees' Comp. Commission (C. C. A.) 64 F.(2d) 84.

While the case lacks precise precedent, there has been some little judicial approach to it. In Neal v. Stuart Foundry Co., 250 Mich. 46, 229 N. W. 595, 597, where the employé was confined in jail awaiting trial, and not as here in consequence of conviction of crime, the court said:

"During a portion of the period for which compensation has been allowed, plaintiff was confined in the Wayne county jail. The defendants urge that the weekly award for that period should be suspended because the award is in lieu of earnings, and while the injured employee is in jail he has no earning capacity and hence he should receive nothing through the award. We think the administration of the Workmen's Compensation Law (Comp. Laws 1915, §§ 5423–5495, as amended) should not be thus complicated or its effectiveness thus impaired. Such a theory could hardly be logically applied in cases of total disability. There the award is based on the theory of complete inability of the employee to continue his usual vocation; but being in jail could hardly increase his already total inability. If the arrested employee were able to give bail, he would continue to receive the compensation under defendants' theory; but if he could not give bail, both he and his dependents would be deprived of even the partial income represented by the award. The employee, though innocent, might be arrested and criminally charged. To summarily suspend on that account a fixed award would obviously deprive him of property without due process of law. There are other reasons why this contention of the defendants cannot be sustained."

In Naslund v. Federal Cement Tile Co., 181 Minn. 301, 232 N. W. 342, the court construed the Minnesota Workmen's Compensation statute, Mason's Minn. St. 1927, § 4274 (d), which provided " 'that in case an employee who is permanently and totally disabled becomes an inmate of a public institution, * * * no compensation shall be payable during the period of his confinement in such institution, unless he has * * * ' dependents," to include, by necessary implication in such a situation, a case of partial disability as well as permanent and total disability. The federal statute with which we are dealing has, however, no such express exception. There may be reasons founded in public policy to justify the inclusion of such an exception by legislative act but it is quite a different matter to judicially read it into the Act.

In Schneider's Workmen's Compensation Law, vol. 2, § 403, p. 1342, under the heading of "Termination of Disability," it is said by the author:

"The fact that an employé has been committed to jail is no grounds for discontinuing compensation payments."

The citation in support of the statement is Hanlon v. Employers Liab. Assur. Corp., 2 Mass. Ind. Acc. Bd. 716; Bull. No. 11, Minn. Dept. Labor, 40. See Clayton and Shuttleworth v. Dobbs, (1908) 2 B. W. C. C. 488. The last cited case (the only one available for reference) is reported in Butterworth's Workmen's Compensation Cases, vol. 2, p. 488. It is a very briefly reported decision of the Lincoln County Court of England. It appears therefrom that the employers under the Workmen's Compensation Act of 1907 had entered into an agreement to pay the injured employé 13 shillings a week for a total disability. Thereafter the employé was sentenced to nine months in prison and the employers sought to be re-

lieved of liability during that period, but admitted that they were without precedent for making the application. The employé had four dependent children. The Judge, Sir Sherston Baker, made an order reducing the sum payable from 13 shillings to 1 pence a week during the imprisonment; and expressed a wish that the employer should in the meantime pay the balance of 12 shillings, 11 pence to the children of the prisoner, which their attorney said should be attended to. It is inferable from the rather meagre report that the scope of review in the County Court was quite different from that possible in this case.

■ Considered on principle, apart from the above authorities, there would seem to be little support for plaintiffs' contention in these cases. Their argument seems necessarily to be based on the underlying assumption that the payments for temporary partial disability are a matter of grace rather than of obligation to the injured employé. This view is erroneous. The legal theory inherent in the Longshoremen's Act as in Workmen's Compensation Acts generally, is the substitution of a certain amount of compensation (variable within limits) to the employé for his common law right of action which is taken away by the statute. While the payments for partial disability are spread over a period of time, for considerations of public policy, the obligation of the employer arises from the fact of the injury in the course of employment and accrues at the time of the injury. The subject matter has been heretofore discussed to some extent by the Circuit Court of Appeals for this Circuit in Wheeling Corrugating Co. v. Mc-Manigal, 41 F.(2d) 593, 595; United States Casualty Co. v. Taylor, 64 F.(2d) 521 and Bowen v. Hockley, 71 F.(2d) 781; also in the opinion of this court in Pyrites Co. v. Davison Chemical Co., 4 F. Supp. 294, 297 [affirmed sub. nom. Hockley v. Wilson (C. C. A.) 70 F.(2d) 108], where it was said: .

"It is a statutory substitute for the common law right of action by the employee which might culminate in a judgment for a capital sum as damages. The obligation of the employer to indemnify for the loss is in its nature a single entity just as was the common law chose in action of the employee. That it is to be liquidated in periodic partial payments does not transmute its legal nature from an entire obligation into several separate obligations each arising from the several periodic payments required to be made, until the whole is paid."

See, also, Kropp v. Parker, Deputy Commissioner (D. C. Md.) 8 F. Supp. 290.

■ Plaintiffs' counsel concedes that if the disability payments were being made in consequence of a *permanent* total or partial disability, his contention would be untenable. But there seems to be no justifiable distinction in principle here between permanent and temporary disability. Plaintiffs' contention also runs counter to the now generally established law that forfeiture of property or estate shall not result from conviction of crime. The Maryland Code, art. 27, § 573, provides that "No conviction or attainder shall work corruption of blood or forfeiture of estate."

There are other considerations which, although not in themselves controlling, tend to support the legal conclusion reached by the Deputy Commissioner in these cases. While the payments are due and payable to the injured employé personally there is inherent in the legal philosophy underlying the Act, the fact that the disabled employé may have legal dependents to whose partial support at least it is reasonable to infer the payments may be applied in whole or in part. In this particular case it appears that the injured employé, now 40 years of age, has several children although the record does not definitely show their number, age or state of dependency. The Act itself (section 9 [33 USCA § 909]) provides that if the injury causes death the compensation is to be payable in stated proportions to the surviving widow and children under the age of 18 years. Another consideration is that inmates of penitentiaries are still often permitted to do productive work and earn some compensation therefrom. And if the employé carried life insurance with partial disability benefits it would hardly be argued that his confinement in jail deprived him of benefits otherwise due, in the absence of some special policy provision to that effect. Nor, if the employé, while partly disabled from an injury in the course of his employment, accidentally sustains another injury not in the course of his employment, which totally disables him, would he become disentitled to his compensation payments so long as they would properly have continued unaffected by the second injury.

Finally it may be observed that the employé's confinement in the penitentiary will not, of course, preclude the employer from further proceedings before the Deputy Commissioner for modification of the award under section 922 of 33 USCA when the em-

ployé's change in physical condition, with respect to his capacity to earn wages if he were free, may justify a discontinuance of the payments for temporary partial disability or reduction in the amount thereof.

I conclude, therefore, that the orders of the Deputy Commissioner in both the cases are in accordance with the law and should not be set aside. Counsel may submit appropriate orders in due course.