## BETHLEHEM SHIPBUILDING CORPORATION, Limited, et al. v. CARDILLO et al.

### No. 712.

District Court, D. Massachusetts.

May 18, 1938.

Brown, Field & McCarthy, of Boston, Mass., (Elias Field, of Boston, Mass.), for libelants.

Samuel B. Horovitz, of Boston, Mass., for respondent Archie Adams.

Francis J. W. Ford, U. S. Atty., of Boston, Mass. (John A. Canavan, Asst. U. S. Atty., of Boston, Mass.), for other respondents.

BREWSTER, District Judge.

This libel is brought under section 21 (b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921 (b), to set aside a compensation order of the defendant Cardillo, a deputy commissioner.

Exceptions to the libel have been overruled, and the libel is now before the court upon the merits. It is grounded on the proposition that the deputy commissioner is without jurisdiction to modify an earlier order under the amendment of 1934, Act of May 26, 1934, § 5, 33 U.S.C.A. § 922.

### Statement of Facts.

1. The defendant Adams, a longshoreman, was injured April 14, 1932, when a heavy plank fell upon his head.

2. The libelant insurance company, the insurance carrier, furnished medical treatment, and without an award paid compensation for total disability for a substantial period. Later a claim for compensation was filed with the defendant Monahan, a deputy commissioner, who, after hearing, on December 26, 1934, found that Adams was totally disabled from the date of injury to December 26, 1934.

On August 21, 1936, after further hearing, the defendant Monahan made a further finding to the effect that the claimant was partially disabled from December 27, 1934, to December 27, 1935, and ordered that the company pay the claimant compensation for partial disability from December 27, 1934, to August 26, 1935, inclusive (34 weeks and 5 days) at the rate of $10 per week; and from August 27, 1935, to December 27, 1935, inclusive (17 weeks and 4 days), at the rate of $3.20 per week. The defendant Monahan rejected Adams' claim for compensation after December 27, 1935, on the ground that the claimant had not been disabled, as a result of the injury, since that date.

3. The last payment of compensation was made September 2, 1936.

4. From May 1, 1935, to August 1, 1935, and from December 30, 1935, to April 30, 1936, the defendant Adams was in jail, serving a sentence for an offense due to excessive indulgence in intoxicating liquors.

5. On December 2, 1936, the defendant Adams applied for a modification of the compensation order of August 21, 1936, under the provisions of section 22, as amended in 1934, 33 U.S.C.A. § 922, alleging a mistake in a determination of fact by the deputy commissioner and a change in condition relative to the period and extent of disability resulting from the injury.

6. On February 9, 1937, a hearing on this application was held by the defendant Cardillo. The libelants duly objected to his authority to act.

7. On March 3, 1937, Cardillo issued a compensation order which is now challenged by the libelants. He found that from December 24, 1934, to August 26, 1935, the

claimant was entitled to compensation for temporary total disability and ordered compensation to be paid at the rate of $16.67 per week; that from August 27, 1935, to December 28, 1935, the claimant's earning capacity was only $10 per week and that he was entitled to compensation at the rate of $10 per week for temporary partial disability; and from December 29, 1935, to February 9, 1937, inclusive, the claimant was wholly disabled and entitled to compensation at the rate of $16.67 per week for temporary total disability, and that such temporary total disability was continuing. He ordered the libelant to pay for the period covered by the Monahan order of August 21, 1936, compensation, in addition to what had been already paid, in the aggregate amount of $1,321.71, and that the weekly payments continue during temporary total disability, subject to the limitations of the act.

8. The defendant Cardillo made elaborate findings of fact relating to the physical and mental condition of the claimant during this period. These findings were based, not only on evidence adduced before Deputy Commissioner Monahan, but also upon additional evidence presented during the hearing before Cardillo.

9. At the hearing before Monahan, resulting in the award of August, 1936, the libelants called several doctors to testify and submitted numerous reports of other doctors who had examined, or had operated upon, the claimant. Adams called no physician to testify on his behalf.

There was also received at this time considerable evidence bearing upon the claimant's excessive use of alcoholic liquors. Monahan evidently reached the conclusion that the claimant had either completely recovered from the injury or that whatever disability he was then suffering was due to his excessive use of alcohol, rather than to the injury. When the matter came before the defendant Cardillo, on application to modify Monahan's last award, the claimant called two eminent physicians, specializing in neurology and psychiatry, who presented a somewhat different picture. From the testimony of these witnesses the deputy commissioner could have found a permanent brain damage which still totally disabled the claimant and that his condition was due to the injury rather than to his habits; in fact, these experts agreed that the brain damage contributed to his excesses. The deputy commissioner so found. Moreover, there

was evidence that since May, 1936, the claimant had not indulged to excess and that his disabilities increased rather than diminished. As an example of the testimony before Cardillo, which was not before Monahan, it is sufficient to refer to a short extract from the testimony of Dr. Abraham Myerson who, after giving the history and stating the result of a recent examination, said that in his opinion "There is definite evidence of organic brain damage, as is evidenced by the nystagmus and deficient eye muscle balance. This is sufficient to account for his dizziness, headaches and fainting spells, or convulsions. More likely, these fainting spells are of epileptic nature. There is no doubt that this man has received a severe injury to the brain of diffused type, and that he is permanently and completely incapacitated for heavy work * * *.

* * *

"Q. What leads you to that conclusion? A. Very definitely, on the objective side. The nystagmus which he shows on the motion of his eyeballs, the non-symmetrical position which the eyeballs have at the present time, and the failure of the eyeballs to move to the complete position during the examination. Those would be three objective signs of mechanical brain damage. On the subjective side, he has these fainting spells, which I believe to be of an epileptic nature, which are evidence of brain injury; then, there is the evidence of concussion. It indicates either a hemorrhage, or some damage to the brain substance itself. It is a scar formation, essentially from irritation set up in the brain itself."

### Conclusions of Law.

The statute under which deputy commissioner Cardillo proceeded to modify the award of Deputy Commissioner Monahan, 33 U.S.C.A. § 922, authorized him, at any time within one year after the date of the last payment of compensation, to review a compensation case on the ground of a change in condition, or because of a mistake in a determination of facts by a deputy commissioner. It is the libelants' contention that Cardillo's award is not in accordance with law because (1) section 22, as amended, does not apply to a case where the injury was sustained prior to the effective date of the amendment; (2) that if the amended statute does apply, the deputy commissioner failed to make an express finding of a change of condition, or a mistake in the determination of the fact, and

(3) that no such change, or mistake, in fact is shown to exist.

■ In an earlier memorandum, in this case, I intimated that the amended statute undoubtedly applied, citing Independent Pier Co. et al. v. Norton, Deputy Commissioner, D.C., 12 F.Supp. 974.

As I am still of the same opinion, I rule against the libelants on this question.

■ It is true that, in the findings of fact, Cardillo does not say in definite language that he finds a change in conditions or a mistake of fact, but no one can read the records of the hearing and his findings of fact without reaching the conclusion that he was aware of the jurisdictional requirements and that he found that they, in fact, existed, entitling him to modify the earlier award.

The third ground urged by the libelants —that there was no change or mistake—is disposed of by the decision of this court in the case of Clyde-Mallory Lines v. Cardillo et al., 22 F.Supp. 40, where Judge McLellan held that if the evidence before the deputy commissioner, hearing an application for modification, was in addition to the record of the prior proceeding, the commissioner had jurisdiction to modify the earlier award on the ground of a mistake in the determination of fact.

It will readily appear from the statement of facts that there was before Deputy Commissioner Cardillo important evidence which was not before Deputy Commissioner Monahan, and upon which apparently Cardillo came to the conclusion that Monahan had made a mistake in the determination of facts when he determined that Adams was no longer incapacitated by reason of his injury, or that his impairment was due to his habits rather than to his injury.

■ The libelants argued that the incarceration of Adams or changed economic condi-itons are not factors upon which a commissioner can rely in deciding whether a "change in conditions" is shown. I can readily accept this argument as sound and as one supported by good authority. McCormick S. S. Co. v. United States Employees' Compensation Commission, 9 Cir., 64 F.2d 84; Atlantic Coast Shipping Co. v. Golubiewski et al., D.C., 9 F.Supp. 315; Bay Ridge Operating Co., Inc., v. Lowe, D.C., 14 F.Supp. 280.

■■ While it is possible to find language in the findings of Cardillo that might indicate that he gave undue weight to these factors, nevertheless there is evidence to warrant a conclusion that there was not only a progressive change in Adams' physical condition but also a "mistake in the determination of a fact" if that phrase is to be given the liberal construction adopted by Judge McLellan. For the sake of uniformity in this court, I am disposed to follow Clyde-Mallory Lines v. Cardillo, supra.

It follows, therefore, that an order be entered dismissing the libel.