38346.   ROYAL INDEMNITY COMPANY *et al.* v. WARREN.

DECIDED SEPTEMBER 30, 1960.

*Greene, Neely, Buckley & DeRieux, Burt DeRieux,* for plaintiffs in error.

*Cain & Smith, Geo. T. Smith,* contra.

NICHOLS, Judge. 1. The employer contends that the evidence conclusively shows that the claimant lost his job with Southern Airways School because of a cutback in personnel, and not due in any way to his physical condition. Of course the loss of one's job or occupation due to economic reasons not connected with his physical condition does not show a change in condition as contemplated by *Code Ann.* § 114-709. It is also elementary that if there is any competent evidence in the record to support the award of the State Board of Workmen's Compensation, the award should not be disturbed. The claimant testified that acrobatics which is necessary in the training of student pilots at Southern Airways aggravated his back injury and that due to his physical condition he could not do as much since his back injury as before and that Dr. Homer Swanson, the only medical witness testifying in the case, and who performed the operation on his back, had cautioned him that he would be unable to do the things that he had done before his injury.

The record disclosed that, according to the claimant's testimony, he was not able to give as much time per student per day as he was before he was injured and that he had stated to Dr. Swanson in March of 1958 that some of the instructors were training twice as many students as he was and that his right arm was giving him trouble, that he had lost strength in it after the injury, whereas just before the injury he had powerful strength in it.

It is true that Dr. Swanson testified that he could see no connection between the symptoms referred to in the claimant's arm and the back injury, but this court has held in *Maryland Casualty Company v. Pitman,* 72 Ga. App. 838, 839 (35 S. E. 2d 319) that the testimony of the claimant as to his injury and disability may be taken in preference to expert testimony. The claimant also stated in his testimony that one reason he had not been too worried about his arm in the beginning was because Dr. Swanson had told him, in his precautionary remarks, before al-

lowing him to go back to Southern Airways School, he would have odd feelings and little pains about his body for quite some time and that his arm had continuously gotten worse and given him trouble.

Under the record Dr. Homer Swanson testified that the claimant would have an additional 5% to 10% disability if it was necessary to do a heavier job and that the only alteration that he would make in his disability findings in March of 1958, as compared to his findings of November of 1957, was that this case, by virtue of his previous ruptured disc had a 20% total back disability for his job as flight instructor. The claimant further testified that some four to six weeks prior to the time that he was released on September 13, 1957, additional instructors were hired by the defendant Southern Airways School from a Government base that had closed and that at the time they were hired there were enough instructors to instruct the student personnel on hand at the time, and that it was only a short time after the new instructors were hired that the claimant, along with seven or eight other pilots was released.

Mr. John L. Sevier, Personnel Supervisor for Southern Airways School, testified that none of those seven or eight pilots who were released in September, 1957, were ever called back to duty, and that they had another cutback in February, 1958, of approximately eight pilots with seven of them being recalled to duty and one having secured a job elsewhere. Mr. Sevier also testified that Southern Airways School had never offered the claimant a job in any capacity since he was released and that he did not know whether any of the pilots that were hired after Mr. Warren's release were any better qualified to teach than the claimant.

The claim was tried as one based on a change of condition and the hearing director found that a settlement receipt, signed by the claimant, was filed with the board which indicated payment of compensation was made up until the time the claimant returned to work. This receipt does not appear in the record, and there is no presumption that the board in forwarding the record on appeal to the superior court failed to follow the clear mandate of *Code* § 114-710 which requires that the board for-

ward: "certified copies of all documents and papers then on file in their office in the matter." "The question presented to the superior court was whether the award of the State Board of Workmen's Compensation was supported by the evidence, and the question before this court is whether the superior court correctly affirmed the award of the full board." *Clay v. Aetna Casualty & Surety Co.*, ante.

While the record affirmatively showed that the claimant had returned to work and for a time did the same job he did before he was injured, in the absence of a final settlement receipt showing that he was not at that time suffering any incapacity to labor, this alone would not be conclusive proof that at that time he was completely recovered. Therefore, the finding that, at the time of the hearing, he was 20% disabled was authorized. In the case of *Skinner Poultry Co. v. Mapp*, 98 Ga. App. 772, 774 (106 S. E. 2d 825), Judge Quillian, now Justice Quillian of the Supreme Court, said: "The Supreme Court has definitely settled the question that where there is competent evidence to support a particular finding of fact, though the compensation board predicates its finding upon an erroneous theory, the award will not be set aside. *American Mutual Liability Ins. Co. v. Sisson*, 198 Ga. 623 (32 S. E. 2d 295)."

Under the record the claimant had been adjudged 100% disabled as the result of an award based upon an agreement; he returned to work but was not able to teach as many students as he had before receiving the injury; he was laid off because of a "reduction in force," applied for a hearing and, as was shown by the evidence, he never had regained full use of his back and at that time, the time of the hearing, was suffering a partial incapacity to labor. The award was authorized and the superior court did not err in affirming it.

*Judgment affirmed. Bell, J., concurs. Felton, C. J., concurs specially.*

FELTON, Chief Judge, concurring specially. I think that the award was correct but I do not think that it could have been based on a change in the employee's condition for the worse. He was paid briefly for 100% temporary total incapacity. He became disqualified to receive payments by working for the

same wages he received at the time of his injury. While the claimant's claim was based on change in condition it was in fact a claim that his disqualification was removed to receive the amount of partial permanent disability which the evidence showed he was entitled to, which was based on a 20% partial permanent disability. The claimant's condition had improved from the 100% total temporary disability on which the agreement was based but he is still entitled to compensation for partial permanent disability after the removal of his disqualification which was his earning as much after the injury as before. The evidence is conclusive that the claimant's permanent partial disability was at the time of injury (considering maximum improvement) 15% for light work and 20% for heavy work. There is no evidence of a change in these percentages.