Antonio LUCERO, Petitioner,

v.

CLIMAX MOLYBDENUM COMPANY; Industrial Commission of Colorado; State Compensation Insurance Fund of Colorado; and Director, Division of Labor, State of Colorado, Respondents.

Curly G. BRASHER, Petitioner,

v.

INDUSTRIAL COMMISSION OF COLORADO, DEPARTMENT OF LABOR AND EMPLOYMENT, Safeway Stores, Inc., and Home Insurance Company, Respondents.

Fred ESPINOZA, Petitioner,

v.

AMAX, INC.; State Compensation Insurance Fund; Mike L. Baca, Gary Rose, and John McDonald, individually and as members of the Industrial Commission of Colorado; the Industrial Commission of the State of Colorado; and Charles J. McGrath, Director, Division of Labor, Respondents.

Nos. 85SC411, 86SC53, 85SC414.

Supreme Court of Coloardo, En Banc.

Feb. 9, 1987.

Richard T. Goold, Denver, for petitioner Lucero.

Douglas R. Phillips, Denver, for petitioner Espinoza.

Paul Tochtrop, Denver, for respondents State Compensation Ins. Fund, Climax Molybdenum Co., and Amax, Inc.

Dawes and Crane, P.C., Robert C. Dawes, Durango, for petitioner Brasher.

Watson, Nathan & Bremer, P.C., Anne Smith Myers, Denver, for respondent Safeway Stores.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Kathryn J. Aragon, Asst. Atty. Gen., Denver, for respondents Industrial Com'n and Dept. of Labor.

ROVIRA, Justice.

These three consolidated workers' compensation cases present an issue of first impression: whether Colorado law permits the reopening of a worker's compensation disability award based on a change of economic conditions without a showing of a change in the claimant's physical condition. In each of these cases, a hearing officer reopened past disability awards and granted additional benefits without finding a change in the claimant's physical condition. The Industrial Commission of the State of Colorado (Industrial Commission) reversed each case, holding that a showing of a change of physical or mental condition was required.[1] The court of appeals affirmed. We now affirm.

I.

The facts in these cases need no detailed recitation for our purposes. Antonio Lucero, a miner employed by Climax Molybdenum Co., was injured on the job on September 24, 1979. Thirteen months later, Lucero returned to work but because of his injury was assigned to light duty and janitorial work. In December 1981, Climax and its insurer, the State Compensation Insurance Fund (SCIF), filed an admission of liability for permanent partial disability consisting of 12 percent loss of use of the right leg at the knee. Lucero did not contest this admission. In September 1982, Lucero was laid off by Climax because of company cutbacks in production and personnel. In February 1983, Lucero filed a petition to reopen the award on the grounds that his employment condition and earning capacity had worsened. Several months later, the hearing officer reopened the case and awarded Lucero additional disability and vocational rehabilitation benefits, concluding that there had been a

1. The Industrial Commission of the State of Colorado was abolished in 1986 and its powers, duties and functions were transferred to the industrial claim appeals panel. Ch. 64, Sec. 2, § 24–1–121(2), 1986 Colo. Sess. Laws 463.

change "in the economic circumstances of the respondent employer's business."

Fred Espinoza, a mine worker employed by Amax, Inc., sustained an injury in an on-the-job accident on July 16, 1976. Amax and SCIF filed an admission of liability in August 1976, and Espinoza was paid temporary total disability benefits for various periods of time. Eventually, Espinoza returned to work in a light-duty position as a janitor. In 1981, a hearing officer found that Espinoza had sustained a permanent partial disability of 27.5 percent as a working unit. Espinoza did not appeal. In April 1982, Espinoza was laid off.[2] In February 1983, he filed a petition to reopen his award, alleging that his "employment condition and industrial disability" had worsened. This petition was granted in August 1983 by the hearing officer who awarded Espinoza temporary disability and vocational rehabilitation benefits. The hearing officer found that Espinoza's condition had changed "because he is no longer employed in the sheltered employment provided by Amax, Incorporated."

Curly Brasher, a truck driver who worked for Safeway Stores, Inc., was injured on the job on April 5, 1978. An admission of liability for temporary benefits was filed in May 1978. After a hearing in May 1981, a hearing officer concluded that Brasher had suffered a permanent partial disability of 15 percent measured as a working unit. In April 1982, the Industrial Commission reduced this award to 7.5 percent disability as a working unit. Two years later, Brasher filed a petition to reopen his award on the ground that he had been unable to locate a truck driving position within his physical capabilities. This petition was granted and Brasher was awarded benefits based on a finding of permanent partial disability of 60 percent as a working unit. Although Brasher had stipulated that his physical condition had not changed, the hearing officer concluded that Brasher had suffered a "worsening of his industrial disability."

The Industrial Commission reversed all three orders, construing the relevant statute to permit reopening of a disability award on the ground of "change in condition" only on a showing of "a change in the physical (or mental) disability condition of a claimant, as a proximate result or effect of the compensable injury." The commission also concluded that the reopening of these cases was contrary to its own rule that required a petitioner seeking to reopen an award on the grounds of change in condition to submit a physician's report showing the petitioner's physical condition and estimated impairment of that condition.[3] The court of appeals affirmed, holding that a

---

**2.** The hearing officer described this as a "two year medical layoff." The Industrial Commission said, "The actual facts are that the claimant was laid off from his light duty employment as a janitor because of a shutdown of a mine which affected the claimant and numerous others, was a shut down caused by a change in economic conditions of the employer, and the claimant and the others were laid off on account of the change of economic conditions." A company official had testified before the hearing officer that the company had laid off 584 employees in January 1982, 412 employees in April 1982, and "everyone at the mine" except for 55 maintenance employees in September 1982.

**3.** At the time of the Lucero and Espinoza petitions, Rule XII of the Rules of Procedure for Workmen's Compensation, 7. C.C.R. 1101–3 (1976), provided:

Every applicant petitioning to reopen any compensation case on the grounds of change

of condition must submit a report in duplicate from a physician showing:
1) The physical condition of the applicant at the time the application is made;
2) An estimate of his impairment in terms of percentage; and
3) Whether or not the impairment is due to the injury for which reopening is sought.

At the time of Brasher's petition, Rule X(B)(2) of the Rules of Procedure for the Workers' Compensation Act, 7. C.C.R. 1101–3 (1983), provided:

When a petition to reopen is filed due to a change of condition, the petition must be in the form prescribed by the director and accompanied by a physician's report stating the claimant's present condition, how his/her condition has worsened or improved and estimating the percentage of impairment and the additional periods of temporary disability, if any.

Lucero, Espinoza, and Brasher all failed to submit a physician's report with their petitions to reopen.

"change in condition" as used in the relevant statute "means a change in the claimant's physical or mental condition resulting from the compensable injury and not a change in economic conditions, even though that change may affect the claimant's income." *Lucero v. Climax Molybdenum Co.*, 710 P.2d 1191 (Colo.App.1985); *Espinoza v. Amax, Inc.*, No. 84CA1134 (Colo. App. August 29, 1985) (not selected for publication); *Brasher v. Industrial Commission*, 717 P.2d 990 (Colo.App.1985).

## II.

Petitioners argue that the court of appeals erred in construing "change in condition" to mean only a change in the claimant's physical or mental condition. *See* § 8–53–119, 3 C.R.S. (1982 Supp.) (hereinafter section 119).[4] They contend that the court of appeals has legislated by judicial fiat and ignored the purpose and language of the workers' compensation laws. We disagree with petitioners' contentions.

Looking solely at section 119, petitioners' contentions are plausible. That statute gives the director of the division of labor the discretionary power to reopen awards for "error, mistake or a change in condition"—without apparent limitation as to type of condition.

■ However, section 119 does not stand in isolation. When determining the meaning of a particular statute, it is necessary to consider the relationship of that statute to other legislative provisions concerning the same subject matter, especially when the statute in question is part of a comprehensive legislative program. *Colorado Gen. Assembly v. Lamm*, 700 P.2d 508, 518 (Colo.1985). Section 8–51–108(2), 3 C.R.S. (1973) (hereinafter section 108), also deals with the reopening of permanent disability awards due to a change in condition. Under section 108, interested parties may obtain a physician's examination of the employee, and that examination, if it shows "a change in degree" in the employee's "disability," will warrant reopening of an award for a change in condition.[5] While sections 108 and 119 do not appear to conflict, we believe section 108 sheds light on the legislature's intent in using the terms "change in condition" in section 119. Clearly, in section 108, the legislature was contemplating a change in physical condition.

■ To resolve this ambiguity, we look to other relevant sources for proper construction of the statute. One highly persuasive source in this case is the interpretation of the Industrial Commission—by rule and order—that section 119 refers solely to a change in physical condition. When

4. At the time of the Lucero and Espinoza petitions, section 8–53–119, 3 C.R.S. (1982 Supp.), provided in pertinent part:

> Upon his own motion on the ground of error, mistake, or a change in condition, the director ... may review and reopen any award and, on such review, may make an award ending, diminishing, maintaining, or increasing compensation and any medical benefits previously awarded....

At the time of the Brasher petition, section 119 had been amended and redesignated section 8–53–113, 3 C.R.S. (1984 Supp.). It provided in pertinent part:

> At [specified times] ... the director or a hearing officer may, after notice to all parties, review and reopen any award on the ground of an error, a mistake, or a change in condition. If an award is reopened, compensation and medical benefits previously ordered may be ended, diminished, maintained, or increased....

Since then, the section has been amended again in ways not germane to these cases. *See* § 8–53–113, 3B C.R.S. (1986); Ch. 77, sec. 3, § 8–53–113, 1985 Colo. Sess. Laws 355, 355–56.

5. Section 8–51–108(2), 3 C.R.S. (1973), provided:

> At any time, and from time to time, during the period for which compensation has been awarded for either permanent total or permanent partial disability, upon application of any party in interest, the director shall require such injured employee to be examined by one or more physicians, and, upon petition from any such interested party supported by a showing that the disability of such injured employee has undergone a change in degree since the entry of such award, the case shall be reopened, and the compensation previously awarded shall be modified, terminated, or continued as the evidence may require.

This statute was amended in 1985 in ways not pertinent to these cases. *See* § 8–51–108(2), 3B C.R.S. (1986).

courts are faced with a problem of statutory construction, deference should be given to the interpretation given the statute by the officer or agency charged with its administration. *Colorado Gen. Assembly v. Lamm,* 700 P.2d 508, 523 (Colo.1985). In the past, we have afforded the "widest possible discretion" to the Industrial Commission in determining the significance of factors relevant to a determination of disability. *American Metals Climax, Inc., v. Cisneros,* 195 Colo. 163, 166, 576 P.2d 553, 556 (1978).

■ Here, the Industrial Commission's interpretation is especially persuasive since the legislature amended section 119 after the commission had published its rule and after it had ruled on the Lucero, Espinoza, and Brasher cases. *See* Ch. 77, sec. 3, § 8–53–113, 1985 Colo.Sess.Laws 355, 355–56. Had the legislature disapproved of the Industrial Commission's interpretation, it could easily have also amended section 119 to allow for reopening of awards on the basis of an "economic" change in condition. *See, e.g., Music City, Inc., v. Estate of Duncan,* 185 Colo. 245, 248–49, 523 P.2d 983, 985 (1974); *Ivanhoe Irrigation Dist. v. McCracken,* 357 U.S. 275, 293–94, 78 S.Ct. 1174, 1184, 2 L.Ed.2d 1313 (1958).

The Industrial Commission's interpretation is also persuasive because it reflects a long-standing construction in this state that "change in condition" refers to a change in physical condition. Over the years, cases based upon "change in condition" have all involved purported changes in physical condition—even in cases where it seems likely that a plausible argument could have been made that an economic change had occurred. *See Zurek v. Gates Rubber Co.,* 163 Colo. 321, 430 P.2d 465 (1967); *Clodfelter v. Indus. Comm'n,* 160 Colo. 39, 413 P.2d 700 (1966); *Watkins v. Hamilton,* 159

Colo. 257, 411 P.2d 15 (1966); *Kokel v. Indus. Comm'n,* 111 Colo. 188, 139 P.2d 259 (1943); *Wierman v. Tunnell,* 108 Colo. 544, 120 P.2d 638 (1941); *Savio House v. Dennis,* 665 P.2d 141 (Colo.App.1983). In construing statutes, the legislature has said: "Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." § 2–4–101, 1B C.R.S. (1980).

Further, the conclusion of the Industrial Commission reflects the practice in other states with similar statutes:

> The "change in condition" which justifies reopening and modification is ordinarily a change, for better or worse, in claimant's physical condition.

3 A. Larson, *The Law of Workmen's Compensation* § 81.31(a), at 15–553–54 (1986). Although a few courts permit reopening without a showing of a change in physical condition, statutes in those states generally imply or provide explicitly for that result. *See, e.g., Hunt v. Indus. Comm'n,* 107 Ariz. 569, 490 P.2d 575 (1971) (statute permitted reopening on showing of "a reduction in the earning capacity of the workman arising out of such injury where there is no change in his physical condition"); *King v. Piedmont-Warner Dev.,* 177 Ga. App. 176, 338 S.E.2d 758 (1985) (statute defines "change in condition" to mean a "change in the wage-earning capacity, physical condition, or status of an employee . . . ."); *Mace v. Merchants Delivery Moving & Storage,* 221 Va. 401, 270 S.E.2d 717 (1980) (statute defined "change in condition" to mean "a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded or terminated which would affect the right to, amount of, or duration of compensation").[6]

**6.** It is true that Professor Larson expresses the opinion that:

> Although the beginning point and usually the main concern of an inquiry into change in condition for reopening purposes is claimant's relative physical condition, it should not be forgotten that disability in the compensation sense has an economic as well as a medical component; accordingly a change in claimant's ability to get or hold employment, or to maintain his earlier earning level, should be considered a "change in condition," even though claimant's physical condition may have remained unchanged.

3A. Larson, *The Law of Workmen's Compensation* § 81.31(e), at 15–554.30 (1986). However,

However, where state statutes only provide for reopening due to a "change of conditions," courts in other states have construed that to mean a change of physical condition only. For instance, in *Osborne v. Johnson*, 432 S.W.2d 800, 804–05 (Ky.1968), the court held:

> Since the determination of post-injury earning capacity is to be based on normal economic conditions, it follows that a mere fluctuation in economic conditions will not be considered a "change of conditions" within the meaning of the reopening statute, KRS 342.125. As we interpret that statute, the change of conditions it contemplates is a change of the workman's *physical* condition.[7]

*See also National Zinc Co. v. Thomas*, 554 P.2d 1, 4 (Okla.1976) (to show change of condition requires demonstration of "a physical change in an employee's ability to labor and to perform duties of his employment since last prior order or award and is attributable to original injury"); *Department of Labor and Indus. v. Moser*, 35 Wash.App. 204, 665 P.2d 926 (1983) (physical change of condition must be shown by medical testimony to readjust a disability award under statutory language requiring a showing of "aggravation, diminution, or termination of disability"); *Independence Indemnity Co. v. White*, 27 S.W.2d 529, 531 (Tex.App.1930) ("It is only when there has been a change in the claimant's physical condition since the first award that the board may change or modify its order awarding or denying compensation."). For more than 50 years, federal courts interpreting the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.S. § 922 (1986), have also construed the language "change in conditions" to mean a change in the physical condition of the claimant, based on "the meaning generally attributed to similar phraseology in state workmen's compensation acts." *Atlantic Coast Shipping Co. v. Golubiewski*, 9 F.Supp. 315, 317 (D.Md.1934); *See also Verderane v. Jacksonville Shipyards, Inc.*, 772 F.2d 775, 780 (11th Cir.1985); *General Dynamics Corp. v. Director, Office of Workers' Compensation Programs*, 673 F.2d 23, 25 (1st Cir.1982); *Burley Welding Works, Inc., v. Lawson*, 141 F.2d 964, 966 (5th Cir.1944); *McCormick S.S. Co. v. United States Employees' Compensation Comm'n*, 64 F.2d 84, 86 (9th Cir. 1933); *Bay Ridge Operating Co. v. Lowe*, 14 F.Supp. 280, 281 (S.D.N.Y.1936); *but cf. Fleetwood v. Newport News Shipbuilding and Dry Dock Co.*, 776 F.2d 1225 (4th Cir.1985).

The rationale behind these cases is a recognition of the fundamental principle that the workers' compensation laws were designed to compensate for diminishment of a worker's earning capacity due to specified physical or mental injuries. *See, e.g.*, §§ 8–51–108(1), 8–52–102(1), 3B C.R.S. (1986). The laws are not intended to protect against diminishment of a worker's earning capacity due to mass layoffs and other external fluctuations in economic conditions. Workers' compensation should not become, by way of strained construction, unemployment insurance. *See Industrial Comm'n v. Baldwin*, 139 Colo. 268, 273, 338 P.2d 103, 105 (1959) (although Workmen's Compensation Act is to be liberally construed, "its provisions must not be pushed beyond the limits of their purpose, nor its funds diverted to those not clearly entitled thereto....").

Because of our recent holding in *Vail Assoc., Inc., v. West*, 692 P.2d 1111 (Colo. 1984), we are even less inclined to adopt

---

since the cases cited by Professor Larson on this point involve statutory modification of the type we have described, we construe his recommendation to be a recommendation for legislative, not judicial, action.

7. The Kentucky statute bears marked similarities to Colorado's section 119. Ky.Rev.Stat.Ann. § 342.125(1) (Michie/Bobbs-Merrill 1983) provides:

> Upon its own motion or upon the application of any party interested and a showing of change of conditions, mistake or fraud or newly discovered evidence, the board may at any time review any award or order, ending, diminishing or increasing the compensation previously awarded ... or change or revoke its previous order....

the construction petitioners would have us give to section 119. In *Vail Associates,* we held that a permanent disability award may take into account the probability of future earnings impairment caused by an injury— even if no actual earnings reduction can be shown at the time of the award. That holding, of course, means that each of the petitioners in this case has had at least one opportunity to show likely future earnings losses of the type each has apparently now suffered.[8] To allow reopening of an award because petitioners did not present this evidence when they had the chance to do so would only encourage a lack of diligence on the part of claimants. *See, e.g., General Dynamics Corp. v. Director, Office of Workers' Compensation Programs,* 673 F.2d 23, 25–26 (1st Cir.1982).[9]

**8.** Lucero did not contest Climax's admission of liability.

Evidence in the Espinoza case prior to his original award for permanent partial disability *did* establish that Espinoza had a "severe impairment of his earning capacity, even though he ha[d] no immediate loss in wages," and the hearing officer, in fact, awarded him $26,292 even though he was working and had suffered no wage loss at that time.

At the hearing prior to Brasher's original award, Brasher's own testimony indicated that he might later be unable to find a truck-driving job. For instance, he testified that he was then unemployed though he had tried to return to work with Safeway and had applied for work at other "truck places." He also testified he was unsure he could physically handle some truck-driving duties. Although the hearing officer found an approximate 11 percent wage loss based on Brasher's potential earnings as a truck driver, he found that Brasher had sustained a permanent partial disability of 15 percent measured as a working unit.

Under these circumstances, even if we were to adopt the construction that an award may be reopened due to a change in economic conditions, it is at least questionable whether Espinoza and Brasher could have shown a change in economic condition.

**9.** In a broader sense, *Vail Associates* also demonstrates the great weight the Industrial Commission has placed in the past, with our approval, on impairment of physical condition in the disability calculus. The case involved a ski instructor who suffered a back injury in the course of his employment and was awarded permanent partial disability of 4.25 percent as a working unit. Later, his physical condition worsened and he petitioned to reopen his

For all these reasons, we decline to construe section 119 in the manner petitioners urge. We note that those few states that permit reopening of awards based on a change of economic circumstances have developed varying formulations of this principle and the limitations upon it. It is the legislature's task to write laws.[10] In *Southern Wooden Box Co. v. Smith,* 5 Ark.App. 14, 19–20, 631 S.W.2d 620, 623 (1982), the court said:

> If economic changes in condition were intended to be grounds for a claim to be reopened, our Arkansas General Assembly could have easily so provided. One can envision changes in economic conditions which would work to the disadvantage of claimants seeking benefits under our Workers' Compensation Act. In this vein, it is conceivable, even predictable,

award. The hearing officer granted this petition and increased the claimant's disability by 5.75 percent even though the evidence showed that the claimant's maximum potential earnings from ski instruction and summer employment were $30,000 a year and the claimant's actual earnings from a new occupation after his condition had worsened were $90,229.79. In reviewing that award, we concluded that actual earnings should not be considered a presumptive measure of a claimant's earning capacity and pointed out several reasons why actual wages might not be indicative of a claimant's disability. In determining disability, we said, citing older cases:

> [T]he critical inquiry is: "Has the workman's physical and mental efficiency been substantially impaired, and to what extent, and for what period of time will this impairment extend into the future?"

In the end, even though the claimant's actual wages were triple that of his potential pre-injury wages, we upheld the increased award to the claimant because "the record as a whole support[ed] the conclusion that West suffered a worsened condition resulting in an increased physical disability of a permanent duration, along with a concomitant impairment of earning capacity...."

**10.** Compare Ariz.Rev.Stat.Ann. § 23–1044(F), (G) (1983); Ga. Code Ann. § 34–9–104 (1982); Va. Code Ann. §§ 65.1–8, to –99 (1980 & 1986 Supp.). *See also J & M Transp. Co. v. Crowe,* 173 Ga.App. 13, 325 S.E.2d 412 (1984); *Royal Indemnity Co. v. Warren,* 102 Ga.App. 501, 116 S.E.2d 757 (1960); *University Mechanical Contractors v. Indus. Comm'n.,* 135 Ariz. 365, 661 P.2d 215 (1983).

that many employers and insurance carriers might choose to seek a reduction in benefits awarded claimants by the Commission when economic conditions improve.... If fluctuating economic changes are to be made a part of our formula in determining benefits, this is a policy question best left for our Arkansas General Assembly to address.

Accordingly, we concur in the view of the court of appeals that "change in condition" in section 119 means a change in the claimant's physical or mental condition resulting from the compensable injury and not a change in economic conditions, even though that change may affect the claimant's income.[11]

Judgment affirmed.

11. Petitioners also argue that the Industrial Commission rule limiting reopening on the ground of change in condition to cases where a change of physical condition can be shown is invalid because it modifies or contravenes section 119. Our approval of the Court of Appeals' and Industrial Commission's interpretation of section 119, however, resolves that contention.