**McCORMICK S. S. CO. et al. v. UNITED STATES EMPLOYEES' COMPENSATION COMMISSION et al.**

No. 6817.

Circuit Court of Appeals, Ninth Circuit.
March 13, 1933.

Bronson, Bronson & Slaven, of San Francisco, Cal., for appellants.

Geo. J. Hatfield, U. S. Atty., and Leo C. Dunnell, Asst. U. S. Atty., both of San Francisco, Cal., for appellees.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a decree dismissing appellants' bill of complaint in which they sought an injunction restraining the enforcement of a compensation award made by appellees in favor of Verner Kallstrom.

On February 11, 1928, while an employee of the McCormick Steamship Company, Verner Kallstrom suffered an injury to his fourth cervical vertebra, which resulted in a permanent partial disability, coming under section 8(e) (21) of the Longshoremen's and Harbor Workers' Compensation Act, 33 US CA § 908(e) (21), entitling him to an award of compensation for his disability amounting to "66⅔ per centum of the difference between his average weekly wages [before his injury] and his wage-earning capacity thereafter in the same employment or otherwise. ` ` ` ` " Prior to his injury, Kallstrom had acted as foreman of his own stevedoring gang, and had occasionally worked as a stevedore. Several compensation orders have been made from time to time by the appellee commission covering Kallstrom's disability, but it will be sufficient to consider, in addition to the order complained of, only the last order prior thereto, which was made on July 5, 1930. The order of July 5, 1930, fixed the compensation to be paid to Kallstrom at $3.96 a week based on the wages earned by him from November 4, 1929, to April 11, 1930, which aggregated $717.01, a loss of $5.94 a week from his average weekly earnings prior to the date of his injury. The order complained of in this proceeding is as follows:

" ` ` ` It appearing to the Deputy Commissioner that claimant is still suffering from permanent partial disability, *that his physical condition has not changed since the last order, that his wages have diminished since said date because of decreased stevedoring work resulting from depressed economic conditions,* that claimant is precluded by his disability from successfully gaining and retaining employment as a stevedore and is limited to lighter physical work as a foreman, that claimant's restricted earning capacity by reason of his disability is not in excess of his actual earnings as a foreman and that claimant's average weekly wages from and after September 18, 1930, have been $25.19, and that claimant is entitled to compensation at the rate of $8.21 a week, beginning with September 18, 1930, indefinitely,

"It is hereby ordered that the compensation order of July 5, 1930, be and it is hereby modified to fix claimant's weekly compensation rate from and after September 18, 1930, at $8.21 a week, and defendants are directed to pay claimant compensation at said rate of $8.21 a week beginning with September 18, 1930, to be paid until a change in claimant's disability or the further order of the Deputy Commissioner." (Italics ours.)

Appellants contend that this order was based upon Kallstrom's decrease in his actual wages after September 18, 1930, rather than a decrease of his wage-earning capacity, and that therefore the award was not in accordance with law. Section 8(e) (21) of the act 33 USCA § 908(e) (21), permits a "reconsideration of the degree of such impairment," that is, of wage-earning capacity, and section 22 of the act (33 USCA § 922), authorizes a modification of the order due to a "change in conditions," but we do not think this applies to a change in earnings due to economic conditions. We agree with the statement of Commissioner A. J. Pillsbury of the California Industrial Accident Commission, concurred in by his associates, in an early decision of that commission (Johnson v. Cluett Peabody Co. et al., 2 C. I. A. C. 10, decided in January, 1915) as follows: "Compensation is awarded only for loss of earning power, and the evidence clearly shows that the applicant was able to do some work during this period if he could find employment. The measure of temporary partial disability is the difference between the wages which the injured employee earned at the time of the accident and the amount which he could earn by the exercise of reasonable diligence thereafter. ` ` ` The mere fact that an employee, by the exercise of reasonable diligence, is unable to find employment, particularly during times when employment is scarce, does not entitle him to a temporary total disability indemnity. Otherwise this Commission would be giving relief for unemployment instead of for the consequences of industrial accident."

The Supreme Court of Illinois states the rule under a somewhat similar statute, as follows: "Compensation is not based on physical or mental disability, except as it affects earning capacity, *nor on opportunity to work*, but is based on previous earnings and earning capacity and is measured by loss of such earning capacity due to the accident." Cons. Coal Co. of St. Louis v. Industrial Commission, 314 Ill. 526, 145 N. E. 675. See, also, Ridge Coal Mining Co. v. Industrial Commission, 314 Ill. 509, 145 N. E. 643.

It should perhaps be added that the Illinois statute (paragraph h, § 19, of the Illinois Compensation Act, Smith-Hurd Rev. St. 1923, c. 48, § 156), with reference to modification of compensation orders differs from the Longshoreman and Harbor Workers' Compensation Act (section 22 [33 USCA § 922]).

The applicant's petition for a modification of the compensation order was not based upon a change in his physical condition but upon his decreased earnings. The Commissioner found expressly that there was no change in the physical condition of Kallstrom since the last order, and that his decrease in wages was due to decreased stevedoring work resulting from depressed economic conditions. It cannot be said that decrease in wages necessarily represents a decrease in earning capacity. A brief excerpt from the testimony given by Kallstrom before the Deputy Commissioner will show this. The situation on the waterfront in regard to employment is thus stated by the injured man:

"Mr. Keith. Q. Can you get as much work now as you did a year ago? A. No, I don't think so.

"Q. Is that on account of the conditions on the waterfront being quieter? A. It is quieter on the waterfront, too, and how can I make a living?

"Q. Here is what we are trying to get at. You were earning something like $200 a month about a year ago as a stevedore foreman. Why aren't you earning that much now as a stevedore foreman? Is it because there isn't as much work as there was on the waterfront? A. I was working on the Luckenbach and they are making pretty good on the Luckenbach yet. They don't make as much as they did last year.

"Q. If you worked at Luckenbach now could you make as much as you did last year? A. Sure I can if I can work every day.

"Q. Do you go out and look for work for your gang as stevedore foreman every day? A. Well, pretty near every day.

"Q. You are down there every morning, are you? Are you down there looking for a job for your men every morning? A. Yes, sure.

"Q. But you can't find a job for them every morning? A. No.

"Q. Is that on acount of the conditions down there being quiet? A. They don't carry any freight and they don't need so many gangs. They have their own star gangs and they don't need outside gangs.

"Q. Because the ships aren't bringing in the freight they were a year ago? A. No."

It is not the object of the act to create an unemployment insurance for those who have been injured, but merely to compensate for decrease in earning capacity due to the injury. There is no evidence in this case showing a decrease in earning capacity, as distinguished from a decrease in wages earned since the order of July 5, 1930. The award complained of is contrary to law, and the intendment of the act and the enforcement of it should therefore be enjoined.

Decree reversed, with instruction to grant the injunction prayed for.