# METROPOLITAN STEVEDORE CO. *v.* RAMBO ET AL.

No. 94–820.   Argued April 25, 1995—Decided June 12, 1995

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 301.

*Robert Evans Babcock* argued the cause and filed briefs for petitioner.

*Jeffrey P. Minear* argued the cause for the federal respondent in support of petitioner under this Court's Rule 12.4. With him on the briefs were *Solicitor General Days, Deputy Solicitor General Kneedler, Allen H. Feldman, Nathaniel I. Spiller*, and *Edward D. Sieger*.

*Thomas J. Pierry* argued the cause and filed a brief for respondent Rambo.*

JUSTICE KENNEDY delivered the opinion of the Court.

Section 22 of the Longshore and Harbor Workers' Compensation Act (LHWCA or Act), 44 Stat. 1437, as amended, 33 U. S. C. § 922, allows for modification of a disability award

---

*Briefs of *amici curiae* urging reversal were filed for Industrial Indemnity Insurance Co. by *Roger A. Levy;* and for the National Association of Waterfront Employers et al. by *Charles T. Carroll, Jr., Thomas D. Wilcox*, and *Franklin W. Losey.*

"on the ground of a change in conditions or because of a mistake in a determination of fact." The question in this case is whether a party may seek modification on the ground of "change in conditions" when there has been no change in the employee's physical condition but rather an increase in the employee's wage-earning capacity due to the acquisition of new skills.

## I

In 1980, respondent John Rambo injured his back and leg while working as a longshore frontman for petitioner Metropolitan Stevedore Company. Rambo filed a claim with the Department of Labor that was submitted to an Administrative Law Judge (ALJ). After Rambo and petitioner stipulated that Rambo sustained a $22\frac{1}{2}\%$ permanent partial disability and a corresponding $120.24 decrease in his $534.38 weekly wage, the ALJ, pursuant to LHWCA §8(c)(21), awarded Rambo $66\frac{2}{3}\%$ of that figure, or $80.16 per week. App. 5. Because the ALJ also found that Rambo's disability was not due solely to his work-related injury and was "materially and substantially greater than that which would have resulted from the subsequent injury alone," LHWCA §8(f)(1), 33 U. S. C. §908(f)(1), he limited the period of petitioner's liability to pay compensation to 104 weeks. *Ibid.;* App. 6. Later payments were to issue from the special fund administered by respondent Director of the Office of Workers' Compensation Programs (OWCP), LHWCA §8(f)(2), 33 U. S. C. §908(f)(2). Employers (or their insurance carriers) contribute to the fund based on their outstanding liabilities. See LHWCA §44(c)(2)(B), 33 U. S. C. §944(c)(2)(B).

After the award, Rambo began attending crane school. With the new skills so acquired, he obtained longshore work as a crane operator. He also worked in his spare time as a heavy lift truck operator. Between 1985 and 1990, Rambo's average weekly wages ranged between $1,307.81 and $1,690.50, more than three times his preinjury earnings, though his physical condition remained unchanged. In light

of the increased wage-earning capacity, petitioner, which may seek modification even when the special fund has assumed responsibility for payments, see LHWCA § 22, 33 U. S. C. § 922; 20 CFR § 702.148(b) (1994), filed an application to modify the disability award under LHWCA § 22. Petitioner asserted there had been a "change in conditions" so that Rambo was no longer "disabled" under the Act. The ALJ agreed that an award may be modified based on changes in the employee's wage-earning capacity, even absent a change in physical condition. After discounting wage increases due to inflation and considering Rambo's risk of job loss and other employment prospects, the ALJ concluded Rambo "no longer has a wage-earning capacity loss" and terminated his disability payments. App. 68. The Benefits Review Board affirmed, relying on *Fleetwood* v. *Newport News Shipbuilding & Dry Dock Co.*, 16 BRBS 282 (1984), aff'd, 776 F. 2d 1225 (CA4 1985), which held that "change in condition[s]" means change in wage-earning capacity, as well as change in physical condition. App. 73. A panel of the Court of Appeals for the Ninth Circuit reversed. *Rambo* v. *Director, OWCP*, 28 F. 3d 86 (1994). Rejecting the Fourth Circuit's approach in *Fleetwood,* the Ninth Circuit held that LHWCA § 22 authorizes modification of an award only where there has been a change in the claimant's physical condition. We granted certiorari to resolve this split, 513 U. S. 1106 (1995), and now reverse.

## II

The LHWCA is a comprehensive scheme to provide compensation "in respect of disability or death of an employee . . . if the disability or death results from an injury occurring upon the navigable waters of the United States." LHWCA § 3, 33 U. S. C. § 903(a). Section 22 of the Act provides for modification of awards "on the ground of a change in conditions or because of a mistake in a determination of fact." 33 U. S. C. § 922. In Rambo's view and that of the Ninth Circuit, "change in conditions" means change in physical condi-

tion and does not include changes in other conditions relevant to the initial entitlement to benefits, such as a change in wage-earning capacity. In our view, this interpretation of "change in conditions" cannot stand in the face of the language, structure, and purpose of the Act.

## A

Neither Rambo nor the Ninth Circuit has attempted to base their position on the language of the statute, where analysis in a statutory construction case ought to begin, for "when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 475 (1992); *Demarest* v. *Manspeaker*, 498 U. S. 184, 190 (1991).

Section 22 of the Act provides the only way to modify an award once it has issued. The section states:

> "Upon his own initiative, or upon the application of any party in interest (including an employer or carrier which has been granted relief under section 908(f) of this title), on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, . . . or at any time prior to one year after the rejection of a claim, review a compensation case . . . and . . . issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation." 33 U. S. C. § 922.

On two occasions we have construed the phrase "mistake in a determination of fact" and observed that nothing in the statutory language supports attempts to limit it to particular kinds of factual errors or to cases involving new evidence or changed circumstances. See *O'Keeffe* v. *Aerojet-General*

*Shipyards, Inc.*, 404 U. S. 254, 255–256 (1971) *(per curiam);* *Banks* v. *Chicago Grain Trimmers Assn., Inc.*, 390 U. S. 459, 465 (1968). The language of § 22 also provides no support for Rambo's narrow construction of the phrase "change in conditions." The use of "conditions," a word in the plural, suggests that Congress did not intend to limit the bases for modifying awards to a single condition, such as an employee's physical health. See 2A N. Singer, Sutherland on Statutory Construction § 47.34, p. 274 (5th rev. ed. 1992) (" 'Ordinarily the legislature by use of a plural term intends a reference to more than one matter or thing' ") (quoting N. Y. Statutes Law § 252 (McKinney 1971)); cf. 1 U. S. C. § 1 ("[W]ords importing the plural include the singular"). Rather, under the "normal" or "natural reading," *Estate of Cowart, supra,* at 477, the applicable "conditions" are those that entitled the employee to benefits in the first place, the same conditions on which continuing entitlement is predicated.

Our interpretation is confirmed by the language of LHWCA §§ 2(10) and 8(c)(21). Section 2(10) defines "[d]isability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U. S. C. § 902(10). For certain injuries the statute creates a conclusive presumption of incapacity to earn wages and sets compensation at 66⅔% of the claimant's actual wage for a fixed number of weeks, according to a statutory schedule. See LHWCA §§ 8(c)(1)–(20), (22), 33 U. S. C. §§ 908(c)(1)–20, (22). When these types of scheduled injuries occur, a claimant simply proves the relevant physical injury and compensation follows for a finite period of time. See *Bath Iron Works Corp.* v. *Director, Office of Workers' Compensation Programs,* 506 U. S. 153, 156, n. 4 (1993); *Potomac Elec. Power Co.* v. *Director, Office of Workers' Compensation Programs,* 449 U. S. 268, 269 (1980). "In all other cases," however, the statute provides "the compensation shall be 66⅔ per centum of the difference between the average weekly wages of the em-

ployee and the employee's wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of partial disability." LHWCA § 8(c)(21), 33 U. S. C. § 908(c)(21). For these nonscheduled injuries, the type at issue in this case, loss of wage-earning capacity is an element of the claimant's case, for without the statutory presumption that accompanies scheduled injuries, a claimant is not "disabled" unless he proves "incapacity because of injury to earn the wages." LHWCA § 2(10), 33 U. S. C. § 902(10). See *Bath Iron Works, supra,* at 156; *Potomac Elec. Power Co., supra,* at 269–270. These two sections make it clear that compensation, as an initial matter, is predicated on loss of wage-earning capacity, and that such compensation should continue only "during the continuance of partial disability," LHWCA § 8(c)(21), 33 U. S. C. § 908(c)(21), *i. e.,* during the continuance of the "incapacity . . . to earn the wages," LHWCA § 2(10), 33 U. S. C. § 902(10). Section 22 accommodates this statutory requirement by providing for modification of an award on the ground of "a change in conditions." 33 U. S. C. § 922.

Rambo's insistence on what seems to us a " 'narrowly technical and impractical construction' " of this phrase, *O'Keeffe, supra,* at 255 (quoting *Luckenbach S. S. Co.* v. *Norton,* 106 F. 2d 137, 138 (CA3 1939)), does more than disregard the plain language of §§ 22, 2(10), and 8(c)(21). It also is inconsistent with the structure and purpose of the LHWCA. Like most other workers' compensation schemes, the LHWCA does not compensate physical injury alone but the disability produced by that injury. See LHWCA §§ 3(a), 8, 33 U. S. C. §§ 903(a), 908; see also 1C A. Larson, Law of Workmen's Compensation § 57.11 (1994). Disability under the LHWCA, defined in terms of wage-earning capacity, LHWCA § 2(10), is in essence an economic, not a medical, concept. Cf. 3 Larson, *supra,* § 81.31(e), p. 15–1150 (1995) ("[D]isability in the compensation sense has an economic as well as a medical component"). It may be ascertained for

nonscheduled injuries according to the employee's actual earnings, if they "fairly and reasonably represent his wage-earning capacity," and if they do not, then with "due regard to the nature of [the employee's] injury, the degree of physical impairment, his usual employment and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future." LHWCA § 8(h), 33 U. S. C. § 908(h). The fundamental purpose of the Act is to compensate employees (or their beneficiaries) for wage-earning capacity lost because of injury; where that wage-earning capacity has been reduced, restored, or improved, the basis for compensation changes and the statutory scheme allows for modification.

## B

Given that the language of § 22 and the structure of the Act itself leave little doubt as to Congress' intent, any argument based on legislative history is of minimal, if any, relevance. See *Connecticut Nat. Bank* v. *Germain,* 503 U. S. 249, 254, (1992); *Ardestani* v. *INS,* 502 U. S. 129, 136 (1991); cf. *Intercounty Constr. Corp.* v. *Walter,* 422 U. S. 1, 8 (1975) (construing ambiguity in application of § 22's 1-year limitations period). In any event, we find Rambo's arguments that the legislative history provides support for his view lacking in force.

From congressional Reports accompanying amendments to § 22 in 1934, 1938, and 1984, Reports suggesting Congress was unwilling to extend the 1-year limitations period in which a party may seek modification, Rambo would have us infer that Congress intended a narrow construction of other parts of § 22, including the circumstances that would justify reopening an award. We rejected this very argument in *Banks, supra,* at 465, and its logic continues to elude us. Congress' decision to maintain a 1-year limitations period

has no apparent relevance to which changed conditions may justify modifying an award.

Rambo next contends that following *McCormick S. S. Co.* v. *United States Employees' Compensation Comm'n*, 64 F. 2d 84 (CA9 1933), the Courts of Appeals unanimously held that "change in conditions" refers only to changes in physical conditions, so Congress' reenactment of the phrase "change in conditions" when it amended other parts of § 22 as late as 1984 must be understood to endorse that approach. We have often relied on Congress' "reenact[ment of] statutory language that has been given a consistent judicial construction," *Central Bank of Denver, N. A.* v. *First Interstate Bank of Denver, N. A.*, 511 U. S. 164, 185 (1994); see *Pierce* v. *Underwood*, 487 U. S. 552, 566–567 (1988), in particular where Congress was aware of or made reference to that judicial construction, see *Brown* v. *Gardner*, 513 U. S. 115, 121 (1994); *United States* v. *Calamaro*, 354 U. S. 351, 359 (1957). The cases in the relevant period, however, were based on a misreading of *McCormick, supra*, which did not reject the idea that § 22 included a change in wage-earning capacity, but merely expressed doubt that § 22 "applies to a change in earnings due to economic conditions," 64 F. 2d, at 85; they involved dicta, not holdings, see, *e. g., Pillsbury* v. *Alaska Packers Assn.*, 85 F. 2d 758, 760 (CA9 1936), rev'd on other grounds, 301 U. S. 174 (1937); *Burley Welding Works, Inc.* v. *Lawson*, 141 F. 2d 964, 966 (CA5 1944); *General Dynamics Corp.* v. *Director, OWCP*, 673 F. 2d 23, 25, n. 6 (CA1 1982) *(per curiam)*; and they were not uniform in their approach, see, *e. g., Hole* v. *Miami Shipyards Corp.*, 640 F. 2d 769, 772 (CA5 1981) ("[T]he compensation award may be modified years later to reflect . . . greater or lesser economic injury"). Under these circumstances, we are not persuaded that congressional silence in the reenactment of the phrase "change in conditions" carries any significance.

In a related argument, Rambo criticizes petitioner's reading of § 22 because it sweeps away an accumulation of more

than 50 years of dicta. Far from counseling hesitation, however, we think this step long overdue. "[A]ge is no antidote to clear inconsistency with a statute," *Brown* v. *Gardner, supra,* at 122, and the dictum of *Pillsbury* and *Burley Welding Works* has not even aged with integrity, see, *e. g., Fleetwood* v. *Newport News Shipbuilding and Dry Dock Co.,* 16 BRBS 282 (1984); *LaFaille* v. *Benefits Review Board, U. S. Dept. of Labor,* 884 F. 2d 54, 62 (CA2 1989); *Avondale Shipyards, Inc.* v. *Guidry,* 967 F. 2d 1039, 1042, n. 6 (CA5 1992) (dictum). Breath spent repeating dicta does not infuse it with life. The unnecessary observations of these Courts of Appeals "are neither authoritative nor persuasive." *McLaren* v. *Fleischer,* 256 U. S. 477, 482 (1921); cf. *United States* v. *Estate of Donnelly,* 397 U. S. 286, 295 (1970).

Finally, Rambo argues that including a change in wage-earning capacity as a change in conditions under § 22 will flood the OWCP and the courts with litigation because parties will request modification every time an employee's wages change or the economy takes a turn in one direction or the other. Experience in the 11 years since the Benefits Review Board decided *Fleetwood, supra,* suggests otherwise, but that argument is, in any case, better directed at Congress or the Director in her rulemaking capacity, see LHWCA § 39(a), 33 U. S. C. § 939(a); *Director, Office of Workers' Compensation Programs* v. *Newport News Shipbuilding & Dry Dock Co.,* 514 U. S. 122, 134 (1995), than at the courts. It is also based on a misconception of the LHWCA and our holding today. We recognize only that an award in a nonscheduled-injury case may be modified where there has been a change in wage-earning capacity. A change in actual wages is controlling only when actual wages "fairly and reasonably represent . . . wage-earning capacity." LHWCA § 8(h), 33 U. S. C § 908(h). Otherwise, wage-earning capacity may be determined according to the many factors identified in § 8(h), including "any . . . factors or circumstances in the case which may affect [the employee's] capacity to earn

wages in his disabled condition, including the effect of disability as it may naturally extend into the future." This circumspect approach does not permit a change in wage-earning capacity with every variation in actual wages or transient change in the economy. There may be cases raising difficult questions as to what constitutes a change in wage-earning capacity, but we need not address them here. Rambo acquired additional, marketable skills and the ALJ, recognizing that higher wages do not necessarily prove an increase in wage-earning capacity, took care to account for inflation and risk of job loss in evaluating Rambo's new "wage-earning capacity in an open labor market under normal employment conditions." App. 66.

We hold that a disability award may be modified under § 22 where there is a change in the employee's wage-earning capacity, even without any change in the employee's physical condition. Because Rambo raised other arguments before the Ninth Circuit that the panel did not have the opportunity to address, we reverse and remand for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

The statutory provision that the Court construes today was enacted in 1927. Although one 1985 case reached the result the Court adopts today, *Fleetwood* v. *Newport News Shipbuilding & Dry Dock Co.*, 776 F. 2d 1225 (CA4), over 60 years of otherwise consistent precedent accords with respondents' interpretation of the Act. For the reasons stated by Judge Warriner in his dissent in *Fleetwood*, I would not change this settled view of the law without an appropriate directive from Congress. Judge Warriner correctly observed:

> "Beginning with the first opinion dealing with the question, handed down in 1933, and continuing without wavering thereafter, the courts have uniformly inter-

preted the term 'change in conditions' in Section 22 of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U. S. C. § 922 (1982), to refer exclusively to a change in the physical condition of the employee receiving compensation. This also was 'the meaning generally attributed to similar phraseology in state workman's compensation acts' in existence before or shortly after the enactment of the LHWCA in 1927. *See Atlantic Coast Shipping Co. v. Golubiewski,* 9 F. Supp. 315, 317 (D. Md. 1934).

"The majority's nice effort to distinguish this prior case law serves only to highlight the numerous and varied factual situations in which the federal courts have withstood temptation and have strictly adhered to this interpretation. In *McCormick Steamship Co. v. United States Employees' Compensation Commission,* 64 F. 2d 84 (9th Cir. 1933), for example, the Court refused to allow the modification of a compensation order under Section 22 where the employee's earnings were diminished as a result of deteriorating economic conditions. *Id.,* at 85. Conversely, the fact that an employee received higher wages because of better economic conditions in the 1940's was held not to constitute a 'change in conditions' so as to allow a reduction in the employee's compensation award. *Burley Welding Works v. Lawson,* 141 F. 2d 964, 966 (5th Cir. 1944). The courts have refused to find a 'change in conditions' where the employee was imprisoned in a penitentiary for life, *Atlantic Coast Shipping Co. v. Golubiewski,* 9 F. Supp. at 316–19, or where the employee was committed to an insane asylum. *Bay Ridge Operating Co. v. Lowe,* 14 F. Supp. 280, 280–82 (S. D. N. Y. 1936).

"In every one of these cases, decided soon after the effective date of the Act, the respective courts explicitly stated and held that the term 'change in conditions' in Section 22 refers to the physical condition of the em-

ployee receiving compensation. In a more recent case, *General Dynamics, Inc. v. Director, Office of Workers' Compensation Programs,* 673 F. 2d 23 (1st Cir. 1982), the court reiterated this interpretation: '[c]ourts uniformly have held a "change in conditions" means a change in the employee's *physical* condition, not other conditions.' *Id.,* at 25[, n. 6] (citing *Burley Welding Works, Inc. v. Lawson,* 141 F. 2d at 966).

"Despite fifty years, and more, of precedent, the majority has overturned this established construction of the term 'change in conditions' and has revised it to have it apply to changes in economic conditions occurring during the term of compensation. Such a departure from settled prior case law is not warranted absent any indication from the Congress that such a change in the statute is what is desired by the lawmakers. Congress, it should not be necessary to add, indicates its desires by adopting legislation.

.         .         .         .         .

"Fifty years is a long time. And perhaps it can be argued that the Board's, and the courts', and the Congress' erstwhile interpretation of the phrase was inhumane, or unenlightened, or an anachronism, or something else even more disparaging. But it cannot be argued, I submit, that the prior interpretation was not and is not the law." *Id.,* at 1235–1236 (footnotes omitted).

For those reasons, I would affirm the judgment of the Court of Appeals. Accordingly, I respectfully dissent.