134 F.3d 954
 1998 A.M.C. 779, 98 Cal. Daily Op. Serv. 548,
98 Daily Journal D.A.R. 776
 Thomas A. RAMEY, Petitioner,
v.
STEVEDORING SERVICES OF AMERICA; Jones Oregon Stevedoring
Company; Eagle Pacific Insurance Company;
Director, Office of Workers Compensation
Programs, Respondents.
In the Matter of: Dean J. BELLMER, Petitioner,
v.
STEVEDORING SERVICES OF AMERICA; Jones Oregon Stevedoring
Company; Eagle Pacific Insurance Company, Respondents.
 Nos. 96-71069, 97-70091.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1997.
Decided Jan. 22, 1998.
 
 Charles Robinowitz, Portland, Oregon, for petitioners.
 
 
 1
 Jay W. Beattie and William M. Tomlinson, Lindsay, Hart, Neil & Weigler, Portland, Oregon, for respondent employers.
 
 
 2
 Nathaniel I. Spiller, Deputy Associate Solicitor, United States Department of Labor, Washington, DC, for the Director.
 
 
 3
 On Petitions for Review of Decisions of the Benefits Review Board. B.R.B. No. 94-2444, B.R.B. No. 93-2471.
 
 
 4
 Before: SKOPIL, and HAWKINS, Circuit Judges, and MERHIGE,* District Judge.
 
 SKOPIL, Senior Circuit Judge:
 I.
 
 5
 Congress included a provision in the Omnibus Consolidated Rescissions and Appropriations Act of 1996, P.L. 104-134, 110 Stat. 1321-211, 1321-219 (1996), that was intended to eliminate the backlog of cases pending before the Benefits Review Board. Consistent with that legislation, on September 12, 1996, hundreds of pending appeals from administrative law judges' decisions were summarily affirmed without Board review. Two of those cases are now before us for consideration--claimant longshore workers who sought disability awards due to hearing losses allegedly suffered from exposure to excessive noise on the worksite. One was denied relief upon a finding that he failed to prove the requisite exposure; the other received an award but contested the amount.
 
 
 6
 Both claimants contend that the automatic affirmance provision of Public Law 104-134 violates constitutional separation of powers principles. Their employers counter that the law is constitutional, and that by virtue of its application to these cases, we lack appellate jurisdiction. We reject the constitutional challenge; the law does not violate separation of powers. We conclude that we possess jurisdiction to review the merits of claimants' disability determinations. We reverse and remand both cases to the Board for a determination of benefits consistent with this opinion.
 
 II.
 
 7
 Tom Ramey retired after twenty-seven years on the waterfront. After his retirement, he had four audiograms, all indicating a hearing loss. John Bellmer was a longshore worker for over thirty years and alleges that he was constantly exposed to excessive noise on the job. Bellmer had three audiograms, one before he retired and two after; all showed significant hearing loss. Both claimants filed disability claims against their employers pursuant to provisions of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950.
 
 
 8
 Ramey's claim was rejected by an Administrative Law Judge on the ground that there was insufficient credible evidence that he had been exposed to injurious levels of noise during the course of his employment. Bellmer's claim was granted, but his award was calculated based on the lower average wage rate at the time of his first audiogram rather than the higher wage rate applicable to his later exams. Both Ramey and Bellmer appealed to the Benefits Review Board.
 
 
 9
 Pursuant to Public Law 104-134, their disability determinations were affirmed, along with all others pending more than one year before the Board on September 12, 1996. Ramey and Bellmer each received a notice from the Board, stating that "consistent with Public Law 104-134, this decision pending review by the Benefits Review Board is considered affirmed and shall be considered the final order of the Board for purposes of obtaining review in the United States courts of appeal." Each notice contained a "Notice of Appeal Rights" which, inter alia, advised claimants that they could file a motion for reconsideration to the Board, and that a timely motion for reconsideration would stay the sixty-day period during which a petition for review must be filed with the court of appeals.
 
 
 10
 Ramey and Bellmer each submitted a timely motion for reconsideration, which the Board denied. Both sought review in this court. Their petitions were filed within sixty days of the denial of reconsideration, but beyond sixty days from the Board's initial affirmances.
 
 III.
 
 11
 Claimants assert that Congress' elimination of the Board's review of their cases violates separation of powers principles. We disagree. The Supreme Court upheld the original review scheme of longshore workers' benefits against a separation of powers claim. See Crowell v. Benson, 285 U.S. 22, 54, 52 S.Ct. 285, 293-94, 76 L.Ed. 598 (1932). The process in its current form has also survived a separation of powers challenge. See Kalaris v. Donovan, 697 F.2d 376, 381, 399-400 (D.C.Cir.1983) ("[F]or constitutional purposes, the organizational scheme created in the 1972 amendments does not differ from the Crowell version."). Nothing in this most recent legislation causes us to conclude that the review process for longshore workers' disability determinations is unconstitutional.
 
 
 12
 Separation of powers principles are intended to preserve the constitutional system of "checks and balances ... built into the tripartite Federal Government as a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." Buckley v. Valeo, 424 U.S. 1, 122, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1976). Consistent with those principles, Congress is free to change the results in pending cases by amending the underlying law, see Gray v. First Winthrop Corp., 989 F.2d 1564, 1569-70 (9th Cir.1993); to redefine the jurisdiction of lower federal courts, see Duldulao v. I.N.S., 90 F.3d 396, 400 (9th Cir.1996); and to "vest judicial power in adjuncts to Article III courts," In re Mankin, 823 F.2d 1296, 1304 (9th Cir.1987).
 
 
 13
 The Board is a constitutionally permissible adjunct tribunal. See Metropolitan Stevedore Co. v. Brickner, 11 F.3d 887, 890 (9th Cir.1993); Kalaris, 697 F.2d at 381, 399-400. Congress has broad authority in this area; Congress may, for example, "prescribe remedies" and require claimants to pursue their claims before these "particularized tribunals." Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 83, 102 S.Ct. 2858, 2877-78, 73 L.Ed.2d 598 (1982). Consistent with that power, Congress may impose a time limitation on the Board's review of cases, particularly when such a deadline serves to hasten review by the courts of appeals. Given that adjunct tribunals "must be limited in such a way that 'the essential attributes' of judicial power are retained in the Article III court," Mankin, 823 F.2d at 1304, Congress' action here is particularly appropriate because it further limits the Board's role, giving even greater oversight to Article III courts. We conclude that Public Law 104-134 does not violate separation of powers principles.
 
 IV.
 
 14
 Employers, joined by the Director of the Office of Workers' Compensation Programs, argue that we lack jurisdiction to consider the merits of these cases on the ground that claimants' petitions for review to this court were not timely. Although acknowledging that claimants' timely motions for reconsideration to the Board would normally toll the sixty-day period for filing a petition in this court, see 20 C.F.R. § 802.406, employers assert that Public Law 104-134 divested the Board of jurisdiction so that claimants' motions for reconsideration were of no effect and did not toll the time for filing. Because claimants' petitions for review were filed more than sixty days from the date the Board affirmed the appeals, employers contend that we do not have jurisdiction. See Felt v. Director, OWCP, 11 F.3d 951, 952 (9th Cir.1993) (timely notice of appeal is required to vest jurisdiction in court of appeals).
 
 
 15
 Employers present a strong argument. Moreover, we give the Director's statutory interpretation "considerable weight." See Director, OWCP v. Palmer Coking Coal Co., 867 F.2d 552, 555 (9th Cir.1989). Nonetheless, we do not agree that Public Law 104-134 should be interpreted to preclude motions for reconsideration. The LHWCA provides a mechanism for the Board to reconsider a panel decision. See 33 U.S.C. § 921(b)(5). The Board's regulations plainly state that "[a]ll requests for reconsideration shall be reviewed by the Board and shall be granted or denied in the discretion of the Board." 20 C.F.R. § 802.409 (emphasis added). Public Law 104-134 is silent on motions for reconsideration; nothing in the law indicates it was intended to rewrite this aspect of the regulatory structure.
 
 
 16
 Congress provided in Public Law 104-134 that when the Board fails to issue a decision within a year, the parties have the opportunity to pursue review in the courts of appeals instead of facing further months or years of delay. Nothing in Public Law 104-134, however, purports to deprive parties of other options, including motions for reconsideration. We decline to read an appropriations act so broadly that we deprive the parties of established rights. See Environmental Defense Ctr. v. Babbitt, 73 F.3d 867, 871 (9th Cir.1995) (noting that repeals by implication are disfavored "when the claimed repeal rests solely in an Appropriations Act") (quoting Tennessee Valley Authority v. Hill, 437 U.S. 153, 190, 98 S.Ct. 2279, 2299-2300, 57 L.Ed.2d 117 (1978)). Whatever deference we owe the Director's interpretation "stops short of contravening plain statutory language." Palmer Coking Coal, 867 F.2d at 555. Accordingly, we conclude that claimants' timely motions for reconsideration to the Board tolled the sixty-day period for filing petitions for review to this court. Claimants' petitions for review are therefore timely; we have jurisdiction to consider the merits of these cases.
 
 V.
 
 17
 Tom Ramey's claim for a disability award was made pursuant to provisions of the LHWCA intended " 'to compensate employees ... for wage-earning capacity lost because of injury.' " Eagle Marine Servs. v. Director, OWCP, 115 F.3d 735, 736 (9th Cir.1997) (quoting Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291, 298, 115 S.Ct. 2144, 2148, 132 L.Ed.2d 226 (1995)). When an injury develops over the course of a longshore worker's career, "liability rest[s] on the employer covering the risk at the time of the most recent injurious exposure related to the disability." Port of Portland v. Director, OWCP, 932 F.2d 836, 840 (9th Cir.1991). The purpose of this "last employer rule is to assign liability ... to one of several potentially liable employers or insurers and thereby avoid the administrative difficulties and delays that would accompany an apportionment of liability." Id. at 841.
 
 
 18
 Employers Stevedoring Services of America (SSA) and Jones Oregon Stevedoring (Jones) do not dispute that Ramey was employed by them during his last month as a longshore worker and, because they are represented by the same insurance carrier, they do not dispute liability between them. They do dispute, however, whether during that last month there was a "last injurious exposure" that would give rise to a finding of liability. Employers assert that the ALJ was correct in ruling that although Ramey sustained a work-related hearing loss, Ramey failed to prove that he was exposed to potentially injurious noise while employed by Jones or SSA.
 
 
 19
 Ramey's case thus turns on the sufficiency of the evidence offered to support his allegation that he was exposed to excessive vocational noise during his employment with either Jones or SSA. Crucial to resolving that issue is the statutory presumption of 33 U.S.C. § 920(a), providing that a claimant's injury is presumed to be covered by the Act in the absence of substantial evidence to the contrary. We have reasoned that the presumption reflects the "humanitarian policy underlying the Act," and "requires resolution of all doubtful questions of fact in favor of the injured employee." Bumble Bee Seafoods v. Director, OWCP, 629 F.2d 1327, 1328 (9th Cir.1980). The Board has applied the presumption to require that a "claimant need only show that [he or she] sustained physical harm and that conditions existed at work which could have caused the harm." Susoeff v. San Francisco Stevedoring Co., 19 B.R.B.S. 149, 154 (1986). We have held that the presumption may be overcome by the employer only "by evidence specific and comprehensive enough to sever the potential connection between the disability and the work environment." Parsons Corp. v. Director, OWCP, 619 F.2d 38, 41 (9th Cir.1980).
 
 
 20
 The ALJ acknowledged this statutory presumption, but ruled that Ramey failed to offer "credible, specific evidence to show the existence of conditions in the workplace at the relevant time that could have caused, at least theoretically, the harm shown." The ALJ reasoned that "[t]he only evidence presented by Ramey with regard to noise conditions on and around the docks is his own general description, which is also confused, contradictory and unrelated to any specific date or year." The record in this case does not support the ALJ's reasoning; rather, we conclude that Ramey offered sufficient evidence of the noise conditions at the relevant worksites to invoke the statutory presumption.
 
 
 21
 Ramey testified that during the last few months of his employment he had log jobs which involved working underneath big noisy cranes, and paper jobs which meant working next to hydraulic electric motors. He specifically described the machinery as having whining, high-pitched noises, explaining that during such operations, "you would have to shout at a person" to be heard. On further questioning, he compared the noise to a "huge engine coming into a station." He testified that the noise goes on for "eight hours a day," "all shift long." In response to the ALJ's questioning, he stated that there is generally no ear protection provided for any of these jobs.
 
 
 22
 The ALJ also determined that this testimony was insufficient to "show that the conditions ... existed in [Ramey's] workplace on January 21, 1990 or on any prior date when he was working for Jones Oregon or Stevedoring Services of America, so that he could have sustained injury in the nature of hearing loss at the time of that employment." Again, the record simply does not support such a conclusion. Although there were no specific dates assigned to the jobs that Ramey described, there was never an issue raised by employers that Ramey did not work these jobs during his last few months of employment. We conclude that Ramey's uncontradicted testimony that conditions existed at his work that could have caused the harm is sufficient to invoke the presumption of section 920(a). Because employers offered no evidence to contradict Ramey's testimony, the presumption should have carried into a finding of liability. Accordingly, we reverse the ALJ's decision and remand for a determination of the amount of Ramey's benefit award.
 
 VI.
 
 23
 John Bellmer was determined to have suffered a hearing loss and to be entitled to a disability benefits award. He contends, however, that the ALJ incorrectly calculated his benefits. There is no dispute regarding the formula--Bellmer is entitled to his average weekly wage multiplied by 200 weeks multiplied by the percentage of loss. See 33 U.S.C. § 908(c)(13), (19). Bellmer's complaint is that the ALJ calculated the average weekly wage based on the timing of the first audiogram, conducted on July 16, 1990. He contends that his average weekly wage should have been calculated by reference to his last day of employment and exposure to injurious noise, July 9, 1991, when he was working for SSA.
 
 
 24
 SSA asserts that Bellmer has not expressly challenged the ALJ's finding that Jones was the "last responsible employer" and should now be precluded from arguing that his average weekly wage should have been determined based on his employment at SSA on July 9, 1991. We disagree. Bellmer's argument regarding the appropriate date to measure his average weekly wage unquestionably brings into issue which employer will be liable. Moreover, as the ALJ noted, employers have "elected to be represented by the same counsel and ... have chosen not to take any position on the question of which of them is the responsible employer."
 
 
 25
 The ALJ reasoned that for purposes of determining an average weekly wage, one must look to the date that the employee first became aware of the disability, and not to the date of last exposure to the harm. The ALJ admits that the Board would rule differently. As the ALJ acknowledged, the Board "has held that the date of the claimant's first awareness of a work-related hearing loss is no longer the crucial date for determining the identity of the responsible employer and that instead the key date is the date of the ... 'determinative audiogram.' " The ALJ further conceded that the Board considers "determinative audiogram" to be "the audiogram that the administrative law judge determines to be the 'best measure of the claimant's occupational hearing loss.' "
 
 
 26
 Notwithstanding the contrary Board authority, the ALJ posited that the Board has misapplied Port of Portland 's "last responsible employer" rule, and that the Supreme Court's decision in Bath Iron Works Corp. v. Director, OWCP, 506 U.S. 153, 113 S.Ct. 692, 121 L.Ed.2d 619 (1993), should be read to overrule the Board's "date of last exposure" standard in hearing loss cases. Although the ALJ presents strong policy arguments, we are not persuaded that either Port of Portland or Bath Iron Works compels us to cast aside Board precedent.
 
 
 27
 In Port of Portland, 932 F.2d at 841, we rejected the Board's rule that fixed liability on the date that the claimant became "aware" of his disability. We reaffirmed that "liability ... must fall on ... the last employer who, by injurious exposure, could have contributed causally to [claimant's] disability." Id. at 840-41. In applying this rule to the claimant's hearing loss, we stated that liability thus falls on "the last employer to expose [claimant] to injurious stimuli prior to the administration of the determinative audiogram." Id. at 841 (emphasis added).
 
 
 28
 Notwithstanding the plain language in Port of Portland, the ALJ carefully relied on key distinctions between that case and this one. First, the ALJ noted that Port of Portland did not define "determinative audiogram" and because the facts indicate that only one audiogram was performed, there is no support for Board precedent that "determinative" means the one exam that the ALJ used to measure the degree of loss. Second, Port of Portland did not address the factual situations where the most reliable audiogram (and thus determinative) is not administered until long after less accurate audiograms have clearly established a work-related loss that ought to trigger an "onset of disability" determination. Finally, the ALJ noted that if the court in Port of Portland intended to establish a "most reliable" audiogram standard, it should have done so expressly. The ALJ nevertheless concedes that the Board arguably could construe Port of Portland as establishing a rule defining the onset of disability in hearing loss cases as the date of the most reliable audiogram. The ALJ reasons, however, that Bath Iron should be read to prohibit such a construction.
 
 
 29
 In Bath Iron, the Supreme Court rejected the Board's prior position that hearing loss is an occupational disease that does not immediately result in disability. See Bath Iron, 506 U.S. at 163, 113 S.Ct. at 698-99. Rather, the Court held that "a worker who is exposed to excessive noise suffers the injury of loss of hearing, which ... is presumptively disabling, simultaneously with that exposure." Id. The ALJ read that language as directing a conclusion that the "date of onset of disability can be no later than the date of the first audiogram that confirms the existence of a work-related hearing loss." That conclusion, however, ignores language in Bath Iron wherein the Court explains that, unlike long-latency diseases such as asbestosis, occupational hearing loss "occurs simultaneously with the exposure to excessive noise" and "the injury is complete when the exposure ceases." Id. at 165, 113 S.Ct. at 699. Thus, the Court concluded that "we think it quite proper to say that the date of last exposure--the date upon which the injury is complete--is the relevant time of injury for calculating a retiree's benefits for occupational hearing loss." Id.
 
 
 30
 The ALJ rejected this language, contending that "the Court was adopting such a standard only for cases involving retirees, i.e., persons who did not become aware of their occupational hearing loss until after their retirement. Since in this case [Bellmer] became aware of his hearing loss and filed a claim well before he retired, the date of last exposure standard adopted in the Bath Iron Works decision does not apply." The ALJ accordingly looked to non-hearing loss cases, Johnson v. Director, OWCP, 911 F.2d 247 (9th Cir.1990) (hand injury), and Todd Shipyards Corp. v. Black, 717 F.2d 1280 (9th Cir.1983) (asbestosis), which fixed the average weekly wages computation based on the "time of injury." Applying those cases, the ALJ fashioned a rule that "the time of injury for purposes of determining average weekly wage in occupational hearing loss cases involving claimants who did not retire before their injuries became manifest, is the date that the employee first became aware of the relationship between the employment, the loss of hearing and the disability."
 
 
 31
 We do not dispute that the ALJ offers us reasonable policy considerations for fashioning a rule contrary to Board precedent. Nonetheless, we simply cannot square the ALJ's rule with either Port of Portland or Bath Iron. Although those cases do not address the exact factual situation presented by Bellmer, the rule provided for in those cases is a bright one and clearly aids in the goal of avoiding unnecessary "administrative difficulties and delays" that might accompany a less definitive rule. See Port of Portland, 932 F.2d at 841 (noting purpose of last employer rule). Thus, we endorse the Board's rule that, for occupational hearing loss claims, the date of last exposure prior to the determinative audiogram should be used for purposes of calculating benefits. We are thus required to reverse the ALJ's decision and remand to the Board with instructions that Bellmer's average weekly wage be recalculated using the date of last exposure, July 9, 1991, and that his disability award be adjusted accordingly.
 
 VII.
 
 32
 We hold that application of the summary affirmance provision of Public Law 104-134 does not violate constitutional separation of powers principles. We reject employers' and Director's argument that we do not have jurisdiction. On the merits, we reverse and remand both disability decisions for consideration by the Board in light of this opinion.
 
 
 33
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., United States Senior District Judge for the Eastern District of Virginia, sitting by designation