[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 07-12818
_____

Agency No. BRB-06-0586

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 30, 2009
THOMAS K. KAHN
CLERK

DEL MONTE FRESH PRODUCE and
SIGNAL MUTUAL INDEMNITY ASSOCIATION, LTD.,

Petitioners,

versus

DIRECTOR, OWCP,
U.S. DEPARTMENT OF LABOR,
WILLIAM N. GATES,

Respondents.

_____

Petition for Review of a Decision of the
Benefits Review Board

_____

(March 30, 2009)

Before TJOFLAT and CARNES, Circuit Judges, and HOOD,* District Judge.

_____

* Honorable Joseph M. Hood, United States District Court for the Eastern District of
Kentucky, sitting by designation.

CARNES, Circuit Judge:

William Gates was injured by forklifts twice while he was working at a Del Monte Fresh Produce plant. The first time, a forklift smashed into the back of the one he was driving, leaving him with injuries to his wrists and the palms of his hands. About eight months later, Gates was walking out of a cooler when a forklift carrying a load of fruit ran him down and knocked him ten to fifteen feet across the floor. While he was still lying face down with his foot in a slot, a pallet with forty-eight boxes of fruit on it was lowered onto Gates' heel. The accident left him with injuries to his neck, back, shoulder, and foot. After suffering those injuries, Gates was no longer able to perform the duties of the forklift operator/warehouseman job he had held at Del Monte. He was given a lighter duty job until the plant closed about a year later. After it closed he eventually found a job as a security guard for Sizemore Security.

Gates received compensation for his disability, including permanent partial disability benefits for his neck injury. Those benefits were calculated according to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 908(c)(21), which entitled Gates to two-thirds of the difference between his pre-injury wages at Del Monte and his post-injury wage-earning capacity. After Gates went to work for Sizemore Security his wages and hours there were among the factors used to

2

calculate his wage-earning capacity for purposes of determining the amount of disability payments Del Monte owed him.

Sizemore initially assigned Gates to the local base of the Air National Guard, where he made $8.34 an hour. Later Sizemore transferred Gates to a position at the Savannah I&D Water Plant, which paid him $7.25 an hour. While Gates was in that position, there was a four-month period during which his usual forty-hour work week was cut down to twenty hours. The reduction in wages and hours prompted Gates to ask for an increase in his disability award from Del Monte on the theory that his wage-earning capacity had been reduced. In a modification proceeding an administrative law judge granted Gates' request and increased the award. The Department of Labor Benefits Review Board affirmed. This is Del Monte's appeal.[1]

## I.

The Longshore and Harbor Workers' Compensation Act provides compensation "in respect of disability or death of an employee . . . if the disability or death results from an injury occurring upon the navigable waters of the United States (including any . . . adjoining area customarily used by an employer in

---

[1] Petitioners include both Del Monte Fresh Produce and its insurance company Signal Mutual Indemnity Association. The parties submitted one brief, so we will use "Del Monte" to refer to both of them.

loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a). The compensation awarded under the Act is not intended to redress the physical injury itself but instead is meant to compensate the worker for the decrease in his wage-earning ability caused by the injury. See Metro. Stevedore Co. v. Rambo (Rambo II), 521 U.S. 121, 126, 117 S. Ct. 1953, 1957 (1997).

To ensure that the compensation continues to fit the loss of wage-earning capacity, the Longshore Workers' Act "liberally permits modification of awards." Id. at 130, 117 S. Ct. at 1959. Section 22 of the Act allows for the modification of otherwise final disability awards "on the ground of a change in conditions or because of a mistake in a determination of fact." See 33 U.S.C § 922. And not just because of changes in the worker's physical condition. As the Supreme Court has explained: "Since the essence of wage-earning capacity is economic, not physical, that capacity may be affected even without any change in the employee's physical condition." Rambo II, 521 U.S. at 125, 117 S. Ct. at 1957 (citations and quotation marks omitted). At the modification hearing this case largely turned on whether Gates met his burden of showing a change in condition.

Under the Longshore Workers' Act the Board's role in reviewing an ALJ's decision is limited to ensuring that the decision is supported by substantial evidence and based on correct legal standards. See 33 U.S.C. § 921(b)(3).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lollar v. Ala. By-Products Corp., 893 F.2d 1258, 1262 (11th Cir. 1990) (quotation marks omitted) (defining substantial evidence in the context of the Board's review of ALJ decisions under the Black Lung Benefits Act). As for our role, we have explained that this Court's "only function is to correct errors of law and to determine if the [Board] has adhered to its proper scope of review i.e., has the Board deferred to the ALJ's fact-finding or has it undertaken de novo review and substituted its views for the ALJ's." Avondale Shipyards, Inc. v. Vinson, 623 F.2d 1117, 1120 n.1 (5th Cir. 1980).[2] Where the Board has upheld the ALJ's decision, our limited review "effectively cloaks the [Board]'s decision with the same deference to which the ALJ is entitled." Lollar, 893 F.3d at 1262 n.4.

## II.

Del Monte faults the Board for accepting the ALJ's finding that Sizemore's transfer of Gates to the lower paying position did not result from his own misconduct. That finding is crucial because if misconduct were the cause of the

---

[2] In our en banc decision in Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

loss of wages, then the effects of the injury could not be the cause. And a worker cannot be compensated under the Longshore Workers' Act unless the injury caused the loss of wages. See Brooks v. Newport News Shipbuilding & Dry Dock Co., 26 Ben. Rev. Bd. Serv. (MB) 1, 4 (June 9, 1992), aff'd sub nom., Brooks v. Director, OWCP, 2 F.3d 64 (4th Cir. 1993). Gates acknowledges that rule but argues that substantial evidence supports the ALJ's finding.

Del Monte presented the ALJ with three documents from Gates' personnel file at Sizemore that showed reports of misconduct. Two of those documents, however, were dated nine months before Gates' transfer and the other one was dated four months before the transfer. Del Monte also presented the testimony of Beth Swank, a Sizemore employee working in payroll and human resources, who stated that because of insubordination Gates had been transferred at the request of the Air National Guard, a Sizemore client. However, there was nothing in the personnel records affirmatively indicating that the transfer was for that reason. Most importantly, it was undisputed that Gates was promoted within a week of the transfer. Del Monte has never offered any explanation for why Gates would have been promoted that soon if the transfer had been for insubordination or other misconduct.

Gates testified that insubordination was not the cause of his transfer. Noting that there were no documents showing why Gates was transferred, the ALJ decided not to credit Swank's testimony. "[C]redibility determinations and the resolution of conflicting evidence are the prerogative of the fact-finder, here the ALJ." Atlantic Marine, Inc. v. Bruce, 661 F.2d 898, 900 (5th Cir. Unit B. Nov. 1981).[3] Especially when the promotion is considered, there is enough evidence to support the ALJ's finding that Gates was not transferred because of misconduct or insubordination. See Bianco v. Ga. Pac. Corp., 304 F.3d 1053, 1056 (11th Cir. 2002) ("This court, and the Board, must uphold the factual determinations of the ALJ if they are supported by substantial evidence in the record as a whole." (citations and internal quotation marks omitted)).

## III.

Allegations of misconduct aside, Del Monte also contends that Gates never met his initial burden of proof requiring him to show a change in condition—that he failed to show an increased loss of wage-earning capacity based on his disability. According to Del Monte, any reduction in wages and hours that Gates

---

[3] Unit B decisions of the former Fifth Circuit are binding precedent in this Court. See Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

7

suffered resulted from a business decision of his new employer, Sizemore, or from Gates' failure to seek alternate employment.

We have no binding precedent to guide us on the question of how to define and allocate the burden of proof when an employee seeks a modification based on a change in condition. There is, however, the Board's earlier decision on that subject, which it followed in this case. In <u>Vasquez v. Continental Maritime of San Francisco, Inc.</u>, 23 Ben. Rev. Bd. Serv. (MB) 428, No. 87-2389 (Feb. 28, 1990), the Board held that a worker had the initial burden of demonstrating a change in condition. <u>Id.</u> at 430–31. He could satisfy that burden by showing that "he was laid off from the job which previously was found to constitute suitable alternate employment for reasons unrelated to any actions on his part and by demonstrating that he remains physically unable to perform his pre-injury job." <u>Id.</u> at 431. After the worker made those showings, "the burden shifted to the employer to show the availability of a new suitable alternate job."[4] <u>Id.</u> Finding the burden-shifting

---

[4] Del Monte argues that <u>Vasquez</u> does not apply because the one suitable alternate job in that case was with the company paying the disability benefits, while Gates' suitable alternate job was with another employer. The burden, Del Monte argues, should not shift to it because it "had nothing to do with" the transfer. That asserted distinction misses the point, which is the compensatory purpose of the Longshore Workers' Act. As the Supreme Court has explained:

> The fundamental purpose of the Act is to compensate employees (or their beneficiaries) for wage-earning capacity lost because of injury; where that wage-earning capacity has been reduced, restored, or improved, the basis for compensation changes and the statutory scheme allows for modification.

approach that the Board announced in the <u>Vasquez</u> decision logical and persuasive, we adopt it.

As for the requisite change in condition, Gates showed not that he was laid off from his job as the claimant in <u>Vasquez</u> had been, but that his wages and hours were reduced, which amounts to a lesser degree of the same thing; in both cases actual wages decreased. The job Gates had at Sizemore when his wages and hours decreased was one that constituted suitable alternate employment. The ALJ found the reduction in his wages and hours did not result from any actions on his part. It is also undisputed that Gates remains physically unable to perform the type of job he had at Del Monte before he was injured. Gates therefore met the <u>Vasquez</u> requirements for showing a change in condition, and the burden shifted to Del Monte to show a reasonably available suitable alternate job that offered a higher weekly wage than the one he had.

The ALJ found that Del Monte had not met its burden. Del Monte presented no labor market study or other vocational evidence of jobs suitable for Gates on the open market. The only evidence on suitable alternate employment

---

<u>Metro. Stevedore Co. v. Rambo</u> (<u>Rambo I</u>), 515 U.S. 291, 298, 115 S. Ct. 2144, 2148–2149 (1995). Del Monte is responsible for compensating Gates and that responsibility continues regardless of whether suitable alternate jobs are internal or external.

came from Swank, who testified that while Gates was working a reduced work week, there were other jobs at Sizemore that he could have taken. She also testified, however, that she did not know what Gates' physical restrictions actually were, and she conceded that while with Sizemore he had tried another job but it proved to be too physically strenuous for him. According to Swank, Air National Guard positions like the one Gates had earlier held come open regularly and she testified that, while none were available at the time of her testimony, some were set to open soon. That was some evidence, or at least speculation, about suitable alternate employment in the future.

The existence of suitable alternate employment is a factual determination. See P&M Crane Co. v. Hayes, 930 F.2d 424, 431 (5th Cir. 1991). In the evidence it presented to the ALJ, Del Monte could not point to any suitable jobs that were then available to Gates. The ALJ did not accept Swank's testimony about future openings as evidence of suitable alternate employment, and we must uphold that finding as long it is substantially supported by the record. See Bianco, 304 F.3d at 1056. Del Monte's burden was to "to establish that at the critical times there were jobs reasonably available within [Gates'] capabilities and for which [Gates] was in

10

a position to compete realistically had he diligently tried."[5]  See New Orleans Stevedores v. Turner, 661 F.2d 1031, 1043 (5th Cir. 1981).  Substantial evidence supports the finding that it failed to meet that burden.

**IV.**

Del Monte next argues that the ALJ erred by basing the award modification on changes in Gates' actual wages instead of making a new finding about his wage-earning capacity.  Wage-earning capacity, in cases of partial disability, is determined by:

> actual earnings if such actual earnings fairly and reasonably represent his wage-earning capacity: *Provided, however*, That if the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity, the deputy commissioner may, in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future.

33 U.S.C. § 908(h).

---

[5] In some situations, an employer may be able to show that there is no suitable alternate employment because of circumstances unrelated to the claimant's disability—such as a global economic downturn.  See McCormick Steamship Co. v. U.S. Employee's Comp. Comm'n, 64 F.2d 84, 86 (9th Cir. 1933) (enjoining modification award where worker's decrease in wages was the result of a decrease in stevedoring work caused by depressed economic conditions).  Del Monte makes no such allegation here.

In determining Gates' wage-earning capacity during the proceedings that led to the initial disability award, the ALJ considered Gates' military background, experience, supervisory skills, and education. After considering those factors the ALJ determined that Gates' wage-earning capacity was equal to his actual wages, and the Board accepted that finding. In the proceedings leading to this appeal, the ALJ modified the award in Gates' favor because of the decrease in his actual weekly wages, and that action was upheld by the Board.

Del Monte argues that an ALJ must consider various factors in addition to actual wages when determining wage-earning capacity, such as a worker's physical condition, age, education, industrial history, and the availability of jobs that the worker can perform after his injury. See Argonaut Ins. Co. v. Patterson, 846 F.2d 715, 723 (11th Cir. 1988); Warren v. Nat'l Steel & Shipbuilding Co., 21 Ben. Rev. Bd. Serv. (MB) 149, No. 85-865, 1988 WL 232748, at *3 (May 26, 1988); Devillier v. Nat'l Steel & Shipbuilding Co., 10 Ben. Rev. Bd. Serv. (MB) 649, 656, No. 78-278 (May 24, 1979). That is true enough, but those factors had already been considered during Gates' initial award proceedings. The decisions Del Monte cites did not involve modifications resulting from decreases in actual weekly wages but instead involved wage-earning capacity at the initial award phase.

The dispute is not about Gates' initial wage-earning capacity. The only variable that led to the modification of the award is actual weekly wages, which decreased because of events that happened at his new employment. There is no evidence that Gates' military background, experience, supervisory skills, education, or any similar factor has changed since the initial award. The only evidence that would suggest a different wage-earning capacity from the weekly wages Gates was earning at Sizemore is Swank's testimony that other similar jobs may be available. The ALJ, however, did not find such jobs to be available, and we have already held that substantial evidence supports that finding.

If Del Monte believed that other factors meant that Gates' wage-earning capacity was higher than it otherwise appeared, Del Monte had the burden of showing that. See Grage v. J.M. Martinac Shipbuilding, 21 Ben. Rev. Bd. Serv. (MB) 66, 69, No. 86-2029, 1988 WL 232782, at *3 (May 25, 1988). The ALJ was not required to hunt for other factors or, absent such a showing, to reconsider the determination made during the initial award proceedings.

## V.

Del Monte contends that even if we find that Gates' actual wage reduction amounts to a loss in wage-earning capacity, its liability should be reduced for any higher than usual weekly wages Gates earned from working more than forty hours

13

a week or from being paid at a higher hourly rate. Del Monte points to records produced at Swank's post-hearing deposition that show Gates' hourly wage to be higher than $8.34 at certain times. It argues that those records prove that Gates was not entitled to the full amount of all the benefits that it paid him.

The Board declined to address Del Monte's contention that it was entitled to a credit for an alleged overpayment of benefits because it failed to raise the issue properly before the ALJ. At oral argument Del Monte explained that it did not present the issue to the ALJ until the post-hearing brief because it did not have access to the Sizemore payroll records showing Gates' hourly rates and overtime hours until it took Swank's deposition following the hearing. Del Monte insists that it did raise this issue at the first opportunity it had to do so, which was in the post-hearing brief to the ALJ. It raised that issue again in its brief to the Board.

Although an ALJ may consider a new issue at any time before filing the compensation order in a case, he is not required to do so. See 20 C.F.R. § 702.336(b). The Board has upheld an ALJ's refusal to consider a new issue raised in a post-hearing brief when the party "fail[ed] to exercise diligence in developing [the] issue, which should have been anticipated prior to the hearing." See Pimpinella v. Universal Maritime Serv., 27 Ben. Rev. Bd. Serv. (MB), 154, 158, No. 91-127, 1993 WL 404257, at *3 (Sept. 17, 1993). Del Monte should have

14

anticipated that Gates' hourly wage might have increased or that he might have occasionally worked extra hours during his years at Sizemore, and it should have explored that possibility before the hearing. The ALJ was not required to consider the belatedly raised issue.

Further, the Board has discretion to decide whether to consider an argument raised for the first time on appeal. See Fox v. W. State Inc., 31 Ben. Rev. Bd. Serv. 118, Nos. 96-1781, 96-1781A, 1997 WL 609371, at *7 (Sept. 29, 1997) ("As employer is making this argument for the first time on appeal, we need not address it."); cf. Skinner v. City of Miami, 62 F.3d 344, 348 (11th Cir. 1995) ("[A]s a general rule, an appellate court will not consider a legal issue or theory raised for the first time on appeal . . ."); Narey v. Dean, 32 F.3d 1521, 1526 (11th Cir. 1994) ("[A]ppellate courts generally will not consider an issue or theory that was not raised in the district court" (quotation marks omitted)); Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360 (11th Cir. 1984) ("The decision whether to consider an argument first made on appeal is left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." (alterations, quotation marks, and footnote omitted)). The Board did not abuse its discretion in refusing to consider Del Monte's argument that it was due a credit, especially

15

given the fact-intensive nature of the new argument and the calculation of wage-earning capacity it would involve.

**AFFIRMED.**